UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL L. TAYLOR and PETER M. TAYLOR,<br><br>*Petitioners*,<br><br>*v.*<br><br>JEROME P. MCDERMOTT, Sheriff, Norfolk County, Massachusetts, and JOHN GIBBONS, United States Marshal, District of Massachusetts,<br><br>*Respondents*. | Case No. 1:20-cv-11272 |

**EMERGENCY PETITION FOR HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241 AND INJUNCTIVE RELIEF**

1. Petitioners Michael and Peter Taylor are detained in federal custody at the Norfolk County Correctional Center, at the request of the Japanese government, pending an extradition hearing. *See* Nos. 20-mj-1069-DLC (D. Mass.) and 20-mj-1070-DLC (D. Mass.).

2. Although the Japanese government's only actual charge asserts that the Taylors aided in a misdemeanor immigration offense (Article 71), which is not an extraditable offense, the United States government—at the behest of Japan—has attempted to justify the Taylors' detention by incorrectly asserting now that the Taylors have violated Japanese Penal Code Article 103 by aiding the "escape" of Carlos Ghosn Bichara ("Ghosn").

3. The Japanese government has not charged the Taylors under Article 103, and the actions alleged in the complaints filed by the U.S. government would not be punishable under Article 103 even if it had been asserted. *See* Exs. 1 and 2 (collectively, "U.S. Complaints"). The government therefore lacked probable cause when it filed the U.S. Complaints, and thereby violated the Fourth Amendment, the Treaty on Extradition Between the United States of America

1

and Japan, Mar. 3, 1978, 31 U.S.T. 892, T.I.A.S. No. 9625 ("Treaty"), and the implementing statute. Japan's formal extradition requests have not cured the defect.

4. Even if the U.S. Complaints were not defective, Magistrate Judge Cabell should have promptly granted bail. Numerous special circumstances—including the likelihood of success on the merits and the COVID-19 pandemic—justify release until a final judgment is made on extradition. In the two weeks since hearing arguments, however, Magistrate Judge Cabell has not yet ruled, which has allowed the Taylors' improper deprivation of liberty under life threatening conditions to continue.

5. Additionally, the Taylors maintain that their full panoply of constitutional rights should be applicable in extradition proceedings, including the Eighth Amendment with its heavy presumption in favor of bail.

6. The COVID-19 pandemic also independently justifies release pending legal proceedings. There currently is a COVID-19 outbreak at the Norfolk County Correctional Center, where the Taylors are being held, and the jail's efforts have proved inadequate to protect the Taylors' health and safety. On information and belief, a forty-year-old inmate at the facility died of COVID-19 just last week. This risk is particularly acute for Michael Taylor, who had an earlier lung surgery, which places him at a heightened risk of serious injury or death should he contract COVID-19.

7. The Court should immediately release the Taylors based on their unconstitutional and unlawful detention until they can have their day in court.

**PARTIES**

8. Petitioner Michael Taylor is a lifelong resident of Massachusetts, natural-born U.S. citizen, and decorated military veteran, having served in the Special Forced for over a decade.

Around 1993, Michael founded a private protective services firm, which has diligently served clients domestically and abroad. Among other clients, Michael has been assisting the United States government. Michael's company has safely repatriated American citizens abducted abroad, including young children and journalists.

9. Petitioner Peter Taylor is Michael Taylor's son and is also a lifelong resident of Massachusetts and natural-born U.S. citizen. Peter is a graduate of Lawrence Academy (Class of 2011) and of the Lebanese-American University in Byblos, Lebanon, where he graduated with a bachelor's degree in 2015. After graduating, Peter returned to Massachusetts and, using his language skills, started a remote tutoring business for students in Lebanon. More recently, in January 2019, Peter founded a digital marketing business. Although Peter has spent significant time in Lebanon over the past 15 months, he considers Massachusetts to be his home, and has consistently returned to his family's residence.

10. Respondent Jerome P. McDermott is the Sheriff of Norfolk County, Massachusetts. Upon information and belief, Sheriff McDermott is responsible for overseeing the Norfolk County Correctional Center. Upon further information and belief, Sheriff McDermott is holding the Taylors at the request of—and pursuant to a contract with—the United States government.

11. Respondent John Gibbons is the United States Marshal for the District of Massachusetts. Upon information and belief, the Taylors are in the custody of the Norfolk County Correctional Center under the authority of Marshal Gibbons.

**JURISDICTION AND VENUE**

12. Jurisdiction is proper in this Court, *inter alia*, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2241.

13.     Venue is appropriate in this Court because the Taylors are being held in custody in Massachusetts.

## FACTUAL BACKGROUND

### A. The Unlawful and Unconstitutional U.S. Arrest Warrants

14.     On May 6, 2020, the government filed complaints for provisional arrest with a view towards extradition with this Court against the Taylors. *See* Exs. 1 and 2. The U.S. Complaints requested that the Court grant warrants for the arrest of Michael and Peter Taylor, supposedly in accordance with the Treaty. *Id.*

15.     The U.S. Complaints allege that the Taylors have "been charged under Article 103 of the Japanese Penal Code with enabling the escape of Carlos Ghosn Bichara…, who was indicted in Japan for financial crimes and had been released on bail pending his trial." *Id.* ¶ 5. The U.S. Complaints further note that the Taylors were charged in Japan with an immigration offense, but that the immigration offense did not form the basis for the request for provisional arrest. *Id.* ¶ 5 n.1.

16.     According to the U.S. Complaints, Japanese warrants for the Taylors' arrests were issued on January 30, 2020, and renewed on February 28, 2020. *Id.* ¶ 6; *see* Exs. A and B (Arrest Warrants).

17.     The government, however, did not provide either Japanese arrest warrant to the Court in connection with its May 6, 2020 request for the issuance of the provisional arrest warrants.

18.     In response to Judge Cabell's order that the government disclose "any Japanese charging document such as a complaint or indictment in its custody, possession or control evincing that the defendants have been charged with a violation of Article 103 of the Japanese Penal Code, as well as any accompanying Japanese warrant" (Nos. 20-mj-1069-DLC & 20-mj-1070-DLC,

Doc. 13), the government produced only the February 28, 2020 Japanese warrants for the Taylors' arrests.

19. Although the February 28, 2020 Japanese arrest warrants specifically reference an immigration offense, they do not cite Article 103. *See* Exs. A and B (Arrest Warrants) at 2.

20. The government has never produced the January 30, 2020 warrants, nor has it ever produced any complaint, indictment or other charging document. Nor does Japan's Request for Extradition contain a copy of the January 30, 2020 warrants or any complaint, indictment or other charging document charging the Taylors with a violation of Article 103.

21. Indeed, the materials included with Japan's Request for Extradition include numerous reports of investigation or analysis containing the following preface describing the matter under investigation: "Regarding the case of suspected violations of the Immigration Control and Refugee Recognition Act by suspect Carlos Ghosn Bichara, …." These materials contain no references to Article 103. The only reference to Article 103 is contained now in documents created in June 2020 for these proceedings only after the Taylors pointed out that no such references occurred in the operative documents that were the basis for their arrest.

22. The Taylors did not violate Article 103 of the Japanese Penal Code. *See* Ex. C (Cleary Decl.) ¶¶ 12-15; Ex. D (Supp. Cleary Decl.) ¶¶ 4-8 . Article 103 makes it a crime to harbor or enable the *escape* of another person who has either committed a crime punishable with a fine or greater punishment or has escaped from confinement. *Id.* ¶ 12. However, based on the specific meaning of the term "escape" used in the code, Article 103 does not apply to assisting an individual with jumping bail. *Id.* ¶¶ 13-15. Notably, the individual who "jumped bail" cannot be prosecuted under the statute or any other provision of the Japanese Penal Code. *Id.* ¶ 10. Japan is only now

beginning to consider amending Article 103 to incorporate bail jumping, clearly *after* the Ghosn incident. That confirms it does not apply now.

23. The Taylors could not be extradited under the Treaty for the immigration offenses because they are misdemeanors, which are not extraditable offenses. *See* Treaty Art. II.

**B. Proceedings before Magistrate Judge Cabell**

24. Based on the information in the U.S. Complaints, Magistrate Judge Cabell issued arrest warrants for the Taylors on May 6, 2020. *See* Exs. 3 and 4 (Motions for Detention) at 4.

25. The Taylors were arrested on May 20, 2020. *Id.* They were taken to the Norfolk County Correctional Center, where they are currently being housed.

26. On June 8, 2020, the Taylors moved to quash the U.S. arrest warrants and requested their immediate release. Ex. 5 ("Motions to Quash"). Among other things, the Taylors pointed out that they had not been charged in Japan under Article 103 because that provision would not apply to the individual they are alleged to have assisted and so cannot be used to charge aiding and abetting something that is not a crime. *Id.* at 11-16. The Taylors also noted that the government could not seek extradition for the immigration offense because it did not carry a sufficiently significant penalty under the extradition treaty. *Id.* at 16-17.

27. In the alternative, the Taylors requested bail pending the formal extradition hearing. *See id.* at 17-33.

28. The Taylors demonstrated that they were not flight risks. In particular, the Taylors noted that they were both in Lebanon—a country without an extradition treaty with Japan—when they became aware of the Japanese arrest warrants. *Id.* at 27. Despite the fact that counsel had advised them that the United States has an extradition treaty with Japan, and that Japan could seek

extradition if they returned to the United States, the Taylors voluntarily travelled back to their home in Harvard, Massachusetts. *Id.*

29.   The Taylors further pointed to a number of special circumstances under the common law of extradition that supported release. *See Drumm v. McDonald*, 2016 WL 111411, at *2-3 (D. Mass. Jan. 11, 2016). Among others, the Taylors showed that (1) they were likely to succeed on the merits of defeating extradition; (2) a COVID-19 outbreak is underway at the Norfolk County Correctional Center, and Michael Taylor has a heightened risk of developing complications based on a prior lung surgery; (3) Michael Taylor is the sole caretaker of his elderly stepfather; and (4) a Lebanese prosecutor had already reviewed the Japanese charges and determined that the Taylors had not violated Article 103. Ex. 5 at 18-33. The Taylors also argued that the special circumstances collectively justified release. *Id.* at 33.

30.   Magistrate Judge Cabell held arguments on the Motion to Quash on June 22, 2020. Ex. 8 (6/22/2020 Hearing Tr.). Although Magistrate Judge Cabell recognized the need to resolve the motion "as soon as practicable" and said that the Court would "rule on this as quickly as we can," an opinion and order on the Motion to Quash is still outstanding, a full two weeks after the hearing. *See id.*, 58:1-4.

31.   On June 29, 2020, the Japanese government submitted formal requests for extradition. Exs. F and G (Extradition Requests). Although the extradition request documents created for these proceedings now have a reference to Article 103 in a summary fashion, they provide little—if any—further information justifying any charge under Article 103. *See* Ex. F at EX-Taylor, M.-00030; Ex. G at EX-Taylor, P.-00030. Nevertheless, the Taylors are being held on the documents that were filed for their provisional arrest, and those, as described above, are fatally flawed—making no mention of Article 103, making no mention of how such a reference

could be a crime in any event, and instead referencing immigration offenses which would not be subject to extradition.

   **C. Release now is necessary and appropriate.**

32. The Taylors have now been incarcerated for over six weeks, and the litigation over their extradition is unlikely to be resolved for months, if not years. It is conceivable that the Taylors could be incarcerated longer pending extradition than they would ever be sentenced in Japan were they found guilty.

33. The Taylors do not present a flight risk.

   a. Michael Taylor is a decorated veteran of the U.S. Special Forces with strong ties to the community. Michael is a lifelong resident of Massachusetts and has lived in the same home with his wife and children since 1991. Michael is the primary caregiver for his stepfather, who is a disabled veteran and suffers from diabetes and limited mobility. Michael is also an active volunteer in the community, and he coaches youth and high school football.

   b. Peter Taylor is also a lifelong resident of Massachusetts. Peter considers Massachusetts to be his home. Peter has never previously been charged with a crime.

   c. As noted above and in their Motions to Quash, both Michael and Peter Taylor were abroad in Lebanon when Japan issued its arrest warrants in January 2020. *See* Ex. E (Marino Decl.) ¶ 3. Both Taylors were aware of the Japanese arrest warrants, as they were widely published by international news outlets. *Id.* The Taylors returned to their home in Massachusetts in March 2020, even though they knew that the United States has an extradition treaty with Japan whereas Lebanon does not. *Id.* ¶¶ 4-5.

   d. Although the government has insinuated in the extradition case that Peter Taylor had booked a flight from Boston to Beirut, Lebanon, departing on May 20, 2020, to

evade arrest, Peter had booked the flight 10 days in advance, without knowledge of the issuance of any U.S. arrest warrant, and was planning to return to Lebanon lawfully to continue working on his digital marketing business which he had done before.

    e.   The Taylors are willing to abide by any reasonable conditions of release, including home confinement and electronic monitoring. The Taylors are also willing to post any reasonable security.

34.    Special circumstances justify their release.

    a.   The Taylors are likely to succeed in defeating the extradition requests from the Japanese government. The Taylors have not been charged in Japan under Article 103, and even if they had been, that law does not apply to assisting an individual to jump bail.

    b.   There is currently an outbreak of COVID-19 at the jail. As of May 26, 2020, just four inmates and staff members tested positive for COVID-19.[1] By July 2, 2020, that number grew to 36.[2] Tragically, a Norfolk County Correctional Center inmate died of the disease on July 2, 2020.[3] Michael is at particular risk of complications should he contract COVID-19 given a past lung surgery.

    c.   Michael is the primary caretaker of his aging stepfather. Michael's stepfather is a disabled veteran suffering from severe hypertension, diabetes, and limited mobility. He is overweight and suffered a heart attack not long ago. Michael cares for his father daily, and prior to his arrest, was ensuring his safety during the pandemic.

---

[1] *See* ACLU of Massachusetts, Tracking COVID-19 in Massachusetts Prisons & Jails, https://data.aclum.org/sjc-12926-tracker/.

[2] *Id.*

[3] The Patriot Ledger, Norfolk County Jail Inmate Dies in Hospital from COVID-19 a Month After Hospitalization (July 2, 2020), https://www.patriotledger.com/news/20200702/norfolk-county-jail-inmate-dies-in-hospital-from-covid-19-month-after-hospitalization

d.  The Public Prosecutor of the Lebanese Court of Cassation—that country's highest court—conducted an independent review of the allegations against the Taylors and concluded that there was no violation of Article 103.

35. The Taylors do not pose any threat to the community, and the government has never argued otherwise. *See* Ex. 6 (Government Opposition) at 10-12. The Taylors are not charged with any crimes of violence. Michael Taylor is a former member of the military and, since being honorably discharged, has provided valuable services to numerous U.S. law enforcement agencies. Peter Taylor has no criminal record.

### COUNT I
### Unconstitutional Arrest and Confinement without Probable Cause in Violation of the Fourth Amendment to the Constitution

36. Petitioners re-allege and incorporate paragraphs 1 through 35 above, as if fully set forth herein.

37. The Fourth Amendment to the United States Constitution provides, among other things, that "no warrants shall issue, but upon probable cause."

38. At a minimum, to establish probable cause, the government must allege facts establishing that the Taylors committed a crime subject to extradition. *See, e.g.*, *Parretti v. United States*, 122 F.3d 758, 771 (9th Cir. 1997), *withdrawn under the fugitive disentitlement doctrine*, 143 F.3d 508 (9th Cir. 1998).

39. The government failed to establish probable cause before seeking the Taylors' arrest and detention because it has not shown either that the Taylors violated Article 103 of the Japanese Penal Code, or that Japan has charged the Taylors under Article 103. The government did not seek the Taylors' arrest or detention on any other basis.

40. During the extradition proceeding, the government never presented evidence establishing probable cause that the Taylors violated Article 103.

41.     Japan's requests for extradition do not present probable cause that the Taylors violated Article 103.

42.     The Taylors' arrest and detention is therefore unlawful and unconstitutional.

## COUNT II
### Arrest and Confinement without Probable Cause in Violation of the Extradition Treaty with Japan

43.     Petitioners re-allege and incorporate paragraphs 1 through 35 above, as if fully set forth herein.

44.     Article IX of the Treaty provides that an "application for provisional detention shall describe the identity of the person to be sought and the facts of the case, and shall contain such further information as may be required by the laws of the requested Party."

45.     Interpreting similar language, courts have required the government to justify a provisional arrest with probable cause. *See, e.g.*, *Sahagian v. United States*, 864 F.2d 509, 513 (7th Cir. 1988) (finding arrest proper where "the federal officials obtained [plaintiff's] provisional arrest and detention pending extradition after obtaining an arrest warrant from a magistrate based upon a showing of probable cause," "[a]s contemplated by [the treaty]").

46.     Article VIII of the Treaty requires a party requesting extradition to provide "[s]uch evidence as would provide probable cause to suspect, according to the laws of the requested Party, that the person sought has committed the offense for which extradition is requested."

47.     At a minimum, to establish probable cause, the government must allege facts establishing that the relators committed a crime subject to extradition. *See, e.g.*, *Parretti*, 122 F.3d at 771.

48.     The government failed to establish probable cause before seeking the Taylors' arrest and detention because it has not shown either that the Taylors violated Article 103 of the

Japanese Penal Code, or that Japan has charged the Taylors under Article 103. The government did not seek the Taylors' arrest or detention on any other basis.

49. During the extradition proceeding, the government never presented evidence establishing probable cause that the Taylors violated Article 103.

50. Japan's requests for extradition do not present probable cause that the Taylors violated Article 103.

51. The Taylors' arrest and detention is therefore contrary to the Treaty.

## COUNT III
### Arrest and Confinement in Violation of 18 U.S.C. § 3184

52. Petitioners re-allege and incorporate paragraphs 1 through 35 above, as if fully set forth herein.

53. Section 3184 of Title 18 of the United States Code permits magistrate judges to issue a "warrant for the apprehension" of a person pursuant to a treaty only "upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government *any of the crimes provided for by such treaty or convention*." (Emphasis added).

54. The government failed to meet the requirements of 18 U.S.C. § 3184 because it has not shown either that the Taylors violated Article 103 of the Japanese Penal Code, or that Japan has charged the Taylors under Article 103. The government did not seek the Taylors' arrest or detention on any other basis.

55. The Taylors' arrest and detention is therefore contrary to 18 U.S.C. § 3184.

## COUNT IV
## Confinement in Violation of
## Fifth Amendment to the Constitution

56. Petitioners re-allege and incorporate paragraphs 1 through 35 above, as if fully set forth herein.

57. The Fifth Amendment to the United States Constitution guarantees, among other things, that "No person shall be … deprived of life, liberty, or property, without due process of law."

58. Judge Cabell failed to rule on the Motion to Quash in a timely manner, effectively denying the Motion and keeping the Taylors incarcerated without bail.

59. The Taylors do not pose a flight risk, among other reasons, as evidenced by the fact that they voluntarily returned to the United States knowing the potential for extradition to Japan. Moreover, the Taylors have no reason to flee and become life-long fugitives from their home, given the short sentence they would face even if extradited and convicted under Article 103 in Japan.

60. The Taylors further have special circumstances that justify their release, including their likelihood of success on the merits, the outbreak of COVID-19 at the Norfolk County Correctional Center, Michael Taylor's need to care for his ailing stepfather, and the determination from the Lebanese prosecutor.

61. Judge Cabell violated the Fifth Amendment by failing to grant the Taylors bail pending the outcome of a final extradition hearing.

## COUNT V
## Pre-Hearing Confinement in Violation of
## Eighth Amendment to the Constitution

62. Petitioners re-allege and incorporate paragraphs 1 through 35 above, as if fully set forth herein.

63. The Eighth Amendment to the United States Constitution guarantees, among other things, that "[e]xcessive bail shall not be required[.]"

64. Judge Cabell failed to rule on the Motion to Quash in a timely manner, effectively denying the Motion and keeping the Taylors incarcerated without bail.

65. The Taylors do not pose a flight risk, among other reasons, as evidenced by the fact that they voluntarily returned to the United States knowing the potential for extradition to Japan. Moreover, the Taylors have no reason to flee and become life-long fugitives from their home, given the short sentence they would face even if extradited and convicted under Article 103 in Japan.

66. The Taylors further have special circumstances that justify their release, including their likelihood of success on the merits, the outbreak of COVID-19 at the Norfolk County Correctional Center, Michael Taylor's need to care for his ailing stepfather, and the determination from the Lebanese prosecutor.

67. Judge Cabell violated the Eighth Amendment by failing to grant the Taylors bail pending the outcome of a final extradition hearing.

**COUNT VI**
**Unconstitutional Conditions of Confinement in**
**Violation of the Fifth Amendment to the Constitution**

68. Petitioners re-allege and incorporate paragraphs 1 through 35 above, as if fully set forth herein.

69. "The due process guarantee of the Constitution obliges the government 'to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health.'" *Savino v. Souza*, 2020 WL 1703844, at *6 (D. Mass. Apr. 8, 2020) (quoting *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011)).

70. Petitioners are under the custody and control of Respondents and are unable to take steps to protect themselves from COVID-19—such as by social distancing.

71. Respondents are aware of COVID-19 and the danger it poses to the Petitioners.

72. Respondents are also aware of the heightened risk of complications faced by individuals with certain medical conditions, including Michael Taylor.

73. Respondents have disregarded an excessive risk to health and safety and have failed to provide adequate safeguards to protect the Petitioners from a serious risk of harm of serious illness, permanent injury, and death.  To the contrary, the outbreak at the Norfolk County Correctional Center appears to be getting worse.

74. Respondents' failure to protect Petitioners from these conditions, including by releasing them from the conditions altogether, constitutes deliberate indifference to the Petitioners' serious medical needs, thereby establishing a violation of the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners request that the Court immediately grant the following relief:

a. Issue a Writ of Habeas Corpus and/or any appropriate order immediately releasing Petitioners from confinement, or, in the alternative, immediately releasing Petitioners from confinement subject to reasonable conditions; and

b. Grant Petitioners such other and further relief as the Court may deem just and appropriate.

**[Signatures on Following Page]**

Dated: July 6, 2020

Respectfully submitted,

By their attorneys,

/s/ Paul V. Kelly
Paul V. Kelly (BBO No. 267010)
Jackson Lewis, P.C.
75 Park Plaza
Boston, MA 02110
Tel (617) 367-0025
paul.kelly@jacksonlewis.com


/s/ Abbe David Lowell (by permission)
Abbe D. Lowell (*pro hac vice forthcoming*)
Christopher D. Man
Zachary B. Cohen
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
Tel. (202) 282-5875
adlowell@winston.com

*Counsel for Michael and Peter Taylor*

/s/ Robert Sheketoff
Robert Sheketoff (BBO# 457340)
One McKinley Square
Boston, MA 02119
Tel. (617) 367-3449
sheketoffr@aol.com

/s/ Daniel Marino (by permission)
Daniel Marino (*pro hac vice forthcoming*)
dmarino@marinofinley.com
Tillman J. Finley (*pro hac vice forthcoming*)
tfinley@marinofinley.com
MARINO FINLEY LLP
800 Connecticut Avenue, N.W., Suite 300
Washington, DC 20006
Tel. 202.223.8888

*Counsel for Michael L. Taylor*

_/s/James P. Ulwick (by permission)_
James P. Ulwick (*pro hac vice forthcoming*)
KRAMON & GRAHAM PA
One South Street, Suite 2600
Baltimore, MD  21202
Tel. (410) 752-6030
JUlwick@kg-law.com

*Counsel for Peter M. Taylor*