UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL L. TAYLOR and       *
PETER M. TAYLOR,       *
      *
      Petitioners,       *
      *
      v.       *       Civil No. 4:20-cv-11272-IT
      *
JEROME P. MCDERMOTT, Sheriff,       *
Norfolk County, Massachusetts, and       *
JOHN GIBBONS, United States Marshal,       *
District of Massachusetts,       *
      *
      Respondents.       *

MEMORANDUM AND ORDER

August 7, 2020

TALWANI, D.J.

Petitioners Michael Taylor and Peter Taylor allegedly assisted Carlos Ghosn Bichara, the

former Chairman of the Board of Directors and Chief Executive Officer of Nissan Motor Co.

Ltd., leave Japan after he was indicted by a Japanese court for financial crimes. The Taylors

were arrested in this District on May 20, 2020, and are currently being held at the Norfolk

County Correctional Facility ("Norfolk") pending an extradition hearing. Before the court are the

Petitioners' Emergency Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Injunctive

Relief [#1] and Motion for Preliminary Injunction [#2], seeking immediate release without

conditions on the ground that they are being detained in violation of the law, and alternatively,

immediate release subject to reasonable conditions, on the ground that they were improperly

denied bail and to protect them from COVID-19. For the following reasons, Petitioners' habeas

petition and motion for preliminary injunction are DENIED.

I.      Background

In 2018, Carlos Ghosn Bichara ("Ghosn") was indicted by a Japanese court for financial crimes allegedly committed during his tenure as the CEO and/or Chairman of the Board of Directors at Nissan Motor Co., Ltd. ("Nissan"). See Ex. F – Michael Taylor Extradition Req. Part IV, ¶¶ 1-2 [#41-6]. Ghosn was later released on bond and conditions, including that he was forbidden from leaving Japan. Id. at Part IV, ¶ 4. At the end of December 2019, Ghosn secretly left the country, despite the terms of his bail.

On January 30, 2020, and February 28, 2020, a Japanese court issued and reissued warrants for Petitioners' arrest for "harboring of criminals and accessoryship of violation of the Immigration Control and Refugee Recognition Act (Article 71, 25 II)." Ex. I – Original Arrest Warrants [#41-9]; Ex. J – Renewed Arrest Warrants [#41-10].

Michael Taylor returned to the United States from Lebanon on February 23, 2020. Peter Taylor followed on March 15, 2020.

The government of Japan subsequently requested the United States issue provisional arrest warrants pursuant to the Treaty governing extradition between the United States and Japan. Treaty on Extradition, U.S.-Japan, effective Mar. 26, 1980, 31 U.S.T. 892, (the "Treaty") Ex. E – [#41-5]. The United States thereafter filed complaints pursuant to 18 U.S.C. § 3184 with a Magistrate Judge, asserting that the Taylors had violated Article 103 of the Japanese Penal Code. See Ex. A – Michael Taylor Compl. [#38-2]; Ex. B – Peter Taylor Compl. [#38-3].[1] The

---

[1] The full proceedings before the Magistrate Judge are docketed at In the Matter of the Extradition of Michael L. Taylor, No. 20-mj-1069-DLC (D. Mass) ("Michael Taylor MJ Docket"), and In the Matter of the Extradition of Peter Taylor, No. 20-mj-1070-DLC (D. Mass.). For convenience, where those dockets are referenced, and the same or similar documents are filed on both dockets, (albeit with slightly different numbering), the court has cited to the Michael Taylor MJ Docket.

Magistrate Judge issued the requested warrants and the Taylors were arrested on May 20, 2020.

The United States moved for detention and the Taylors were detained pending a request for a

detention hearing. United States' Mot. for Detention, Michael Taylor MJ Docket (May 20,

2020), ECF No. 9; Elec. Clerk Notes, Michael Taylor MJ Docket (May 20, 2020), ECF No. 11.

The Taylors subsequently moved to quash their arrest warrants or for release from detention. See

Mot. to Quash Arrest Warrants or for Release from Detention, Michael Taylor MJ Docket (June

8, 2020), ECF No. 17. The Magistrate Judge held a hearing on these motions on June 22, 2020,

and took the matters under advisement.

While the motions were pending, Japan submitted its formal extradition request. Notice

of Japan's Submission of Req. for Extradition, Michael Taylor MJ Docket (July 2, 2020) ECF

No. 37; Ex. K – Extradition Req. Transmittal [#41-11]; see also Ex. F – Extradition Req. for

Michael Taylor [#41-6]. The parties also filed further briefing and supplemental authorities with

the Magistrate Judge.

On July 6, 2020, the Taylors filed with this court the pending petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241 [#1] and a Motion for Temporary Restraining Order and

Preliminary Injunction [#2].

The following day, the Magistrate Judge issued electronic orders denying the Motion to

Quash or for Release from Detention pending before him. Elec. Order, Michael Taylor MJ

Docket (July 7, 2020) ECF No. 40. Shortly thereafter, the Magistrate Judge issued his written

decision providing reasoning for denying Petitioners' motion, finding Petitioners' challenge to

the provisional arrests mooted by Japan's formal extradition request, and further finding that bail

was not warranted as the Taylors pose a flight risk and failed to establish special circumstances

warranting bail. Magistrate Judge's Mem. on Resps.' Mot. to Quash Arrest Warrants or for

Release from Detention, Michael Taylor MJ Docket (July 10, 2020) ECF No. 41, ("Magistrate

Judge's Decision"). An extradition hearing in front of the Magistrate Judge is currently set for

August 28, 2020. See Elec. Notice of Hr'g, Michael Taylor MJ Docket (August 4, 2020) ECF

No. 47.

Meanwhile, this court denied Petitioners' requested temporary restraining order and set

the matter for further hearing. Elec. Order [#33]. The parties submitted further briefing, see

Pet'rs'' Mem. in Supp. of Mot. for Prelim. Inj. ("Pet'rs' Mem.") [#38]; Government's Opp'n to

Mot. for Prelim. Inj. and Resp. to Habeas Pet. ("Gov's Opp'n") [#41], and the court heard

argument and took the matter under advisement.

II.     Analysis

The Taylors seek a preliminary injunction ordering their immediate release from custody,

or, alternatively, an order reversing the Magistrate Judge's denial of bail, arguing that special

circumstances and evidence that the Taylors are not flight risks warrant such a conditional

release. They additionally ask for release based on the government's alleged deliberate

indifference to the risk posed by COVID-19.

A.  Bail Determination

Bail decisions are properly challenged prior to an extradition hearing via a petition for a

writ of habeas corpus. Drumm v. McDonald, 2016 WL 111411, at *1 n.1 (D. Mass. Jan. 11,

2016). "There is a presumption against bail in extradition cases and only 'special circumstances'

justify release on bail." United States v. Kin-Hong, 83 F.3d 523, 524 (1st Cir. 1996)

(quoting Wright v. Henkel, 190 U.S. 40, 63 (1903)). In addition to establishing special

circumstances, the extraditee also bears the burden of establishing by clear and convincing

evidence that he is not a flight risk or a danger to the community. United States v. Castaneda-

Castillo, 739 F. Supp. 2d 49, 55 (D. Mass. 2010) (internal citation omitted). Special circumstances must "be more or less unique to the supplicant and not be one that is applicable to extraditees generally," Drumm, 2016 WL 111411, at *3, and are limited to "situations where the justification [for bail] is pressing as well as plain." United States v. Williams, 611 F.2d 914, 915 (1st Cir. 1979) (per curiam) (internal citation omitted). However, the determination of special circumstances is "case specific" and "the list of potential 'special circumstances' is not limited to those previously recognized in published decisions." Castaneda-Castillo, 739 F. Supp. 2d at 56 (quoting In re Extradition of Gonzalez, 52 F. Supp. 2d 725, 736 (W.D. La. 1999)).

Review of a bail determination "is limited to the issue of whether or not there were reasonable grounds for the Magistrate Judge's denial of bail." Kin-Hong v. United States, 926 F. Supp. 1180, 1184 (D. Mass. 1996), rev'd on other grounds, 83 F.3d 523; see also Drumm, 2016 WL 111411, at *3 ("[t]he determination of what constitutes a 'special circumstance' is fact–intensive and largely left to the Magistrate Judge's discretion . . ."). In reviewing the bail decision, the court defers to the Magistrate Judge's factual findings and reviews legal determinations de novo. Kin-Hong, 926 F. Supp. at 1184.

a.   The Magistrate Judge's Decision

In his decision on Petitioners' bail request, the Magistrate Judge considered each of the four asserted special circumstances and found that the circumstances, individually and in the aggregate, did not warrant bail.

First, the Magistrate Judge rejected Petitioners' argument that they have a high probability of success in challenging their extradition based on a contention that their conduct was not unlawful under Article 103 of the Japanese Penal Code. In finding the contention unpersuasive, the Magistrate Judge observed that, based on the text of the statute and evidence

5

submitted by the Japanese government, the Taylors' conduct appeared to "fall squarely within the heartland" of conduct criminalized by Article 103. Magistrate Judge's Decision 9-11. Accordingly, while the Magistrate Judge assumed that Petitioners may be able to present a non-frivolous legal defense along these grounds, he found they did not establish the high likelihood of success necessary to potentially merit release on bail. Id. at 10-11.

Second, while acknowledging that Article IV § 2 of the Treaty allows for the denial of extradition if the extraditee has been "tried and acquitted" of the charged offense in a third country, the Magistrate Judge found that Petitioners were not, in fact, effectively "tried and acquitted" by the Lebanese judicial system despite Petitioners' contention to the contrary. Id. at 11-12. Though he noted evidence that a Lebanese prosecutor was asked to investigate the case at the behest of the Taylor family and decided to close the case without bringing charges, the Magistrate Judge found Petitioners' argument to have "no force" without a showing that they were actually "tried and acquitted," as defined by the terms of the Treaty. Id. Furthermore, the Magistrate Judge reasoned that the question of Article IV § 2's application was better suited for consideration by the executive branch after a determination on extraditability. Id. at 12.

Third, the Magistrate Judge recognized that ongoing detention prevented Michael Taylor from continuing in his role as the primary caretaker for his stepfather who faces heightened risks from COVID-19 because of his age and health. Id. However, the Magistrate Judge found that this concern was not unique to Michael Taylor, as opposed to other extraditees also separated from loved ones while in detention, and so declined to grant bail on this basis. Id. at 12-13.

Fourth, while the Magistrate Judge credited Petitioners' report that 35 inmates at Norfolk had in the past tested positive for COVID-19 and that Michael Taylor's medical history may put him at higher risk if he contracts the disease, he found the risk posed by COVID-19 did not, on

its own, merit bail. Id. at 13-15. In so ruling, the Magistrate Judge took into account the government's evidence that no one has tested positive in the unit where the Taylors are located, there are no current active cases of the virus in the entire prison, and that Norfolk has implemented significant measures to protect the prison population. Id. at 14-15.

Finally, the Magistrate Judge found that these factors, in aggregate, did not amount to the necessary special circumstances to warrant bail. Id. at 15.

The Magistrate Judge also made individualized rulings as to the Taylors' risk of flight. Id. at 15-18. He first acknowledged that Michael Taylor provided "not insubstantial" arguments for why he was not a flight risk, including his voluntary return to the United States despite knowledge of the Japanese warrants, prior decisions to return to the United States to face criminal charges, and low incentive to flee given the relatively short jail sentence he could receive if convicted in Japan. Id. at 15-16. However, "in light of the charges and Mr. Taylor's past," the Magistrate Judge nonetheless found that Michael Taylor failed to meet his burden to show, by clear and convincing evidence, that he was not likely to flee. Id. at 16. For this finding, the Magistrate Judge cited Michael Taylor's experience with clandestine operations, previous determinations by Utah courts who denied him release during a case in 2012 in part on the basis of his ability to effectuate flight, his strong ties to Lebanon, and that the pending charges allege that Michael Taylor "used his skills and experience to plan and execute a most intricate, sophisticated, and deceptive scheme." Id. at 16-17.

The Magistrate Judge also found Peter Taylor failed to meet his burden on the question of flight risk for "similar reasons." Id. at 18. The Magistrate Judge specifically highlighted Peter Taylor's strong ties to Lebanon, including that he had lived in the country until recently while trying to establish the family business there, and his role alongside Michael Taylor in facilitating

7

Ghosn's escape from Japan. Id.

      b.  Review of Special Circumstances

          i.  High Probability of Success

As the First Circuit has pointed out, courts have listed a high probability of success in defeating an extradition request as a "special circumstance" for granting release on bail. Kin-Hong, 83 F.3d at 524 (citing Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989)). Petitioners argue this applies here and that they have a high probability of success in challenging extradition. They assert, without contesting the factual allegations underlying the extradition request, that Japan is misinterpreting its own law by applying Article 103 to their conduct and that, therefore, they have not committed an extraditable crime.[2] Pet'rs' Mem. 15-24, 30-31 [#38]. They further assert the Magistrate Judge failed to adequately weigh evidence presented by their expert, Professor William Cleary of Hiroshima Shudo University. Id. at 22 (citing Ex. C – William Cleary Decl. [#38-14]; Ex. D – Suppl. William Cleary Decl. [#38-15]); see also Ex. P – Second Suppl. William Cleary Decl. [#38-27].

As an initial observation, Petitioners seek to establish a high probability of success in defeating the extradition request through a piercing inquiry into Japanese law. They offer no cases where a court has granted release on the ground that a foreign nation has misinterpreted its own law, and it seems a steep path for Petitioners to succeed in this argument, given necessary

---

[2] Under Article III of the Treaty states that "[e]xtradition shall be granted only if there is sufficient evidence to prove either that there is probable cause to suspect, according to the laws of the requested Party, that the person sought has committed the offense for which extradition is requested . . . ." Ex. E – Treaty [#41-5]. Article II defines crimes covered by the Treaty as those "punishable by the federal laws of [the United States and by the laws of Japan] by death, by life imprisonment, or by deprivation of liberty for a period of more than one year." Id.

Individuals convicted of violating Article 103 face a maximum imprisonment of 3 years. See Ex. Q – Masayuki Yoshida Decl. ¶ 6 n.1 [#41-17].

deference to foreign countries' understanding of their own law and as courts liberally construe the scope of extradition treaties. See Grin v. Shine, 187 U.S. 181, 190 (1902) (stating that, in the context of extradition, "it can hardly be expected of us that we should become conversant with the criminal laws of [the requesting country], or with the forms of warrants of arrest used for the apprehension of criminals."); United States v. Kin-Hong, 110 F.3d 103, 110 (1st Cir. 1997) ("extradition treaties, unlike criminal statutes, are to be construed liberally in favor of enforcement because they are 'in the interest of justice and friendly international relationships.'") (quoting in part Factor v. Laubenheimer, 290 U.S. 276, 298 (1933)). In addition, extradition is neither a civil nor a criminal proceeding and the role of the judiciary in the process is limited. See In re Extradition of Hilton, 2013 WL 1891327, at *3 (D. Mass. May 3, 2013) ("An extradition proceeding is not an ordinary Article III case or controversy and it is not a criminal proceeding.") (citation omitted); see also In re Extradition of Howard, 996 F.2d 1320, 1325 (1st Cir. 1993) ("an officer who presides over such a proceeding is not exercising 'any part of the judicial power of the United States.'") (quoting in part In re Kaine, 55 U.S. (14 How.) 103, 120 (1852)). "[T]he procedures for extradition are governed by statute," dividing responsibility "between a judicial officer and the Secretary of State." Kin-Hong, 110 F.3d at 109. Courts must therefore be wary not to step into the realm of a foreign policy maker, reserved in the context of extradition for the executive branch. See id. (stating Secretary of State retains "sole discretion to determine whether or not [a person] should actually be extradited.").[3]

With these considerations in mind, Petitioners do not convince this court that they have a

---

[3] Petitioners urge this court to consider Japan's alleged refusal to extradite indicted executives of the Takata Corporation to the United States as part of an analysis of the United States' treaty obligation (and whether bail should be granted). See Pet'rs' Mem. 2, 39 [#38]. Based on the constitutional separation of powers, the court finds that matter outside the scope of what the court may consider here.

high likelihood of success in proving that Japan has misinterpreted its own law and that, therefore, their conduct is not an extraditable crime pursuant to the Treaty.[4]

Article 103 punishes "a person who [1] harbors or enables the escape of another person [2] [a] who has either committed a crime . . . or [b] who has escaped from confinement." Ex. O – Japanese Treatise [#41-15] (numbering added by the court). The Petitioners' expert, Professor Cleary, argues that the verb *toso* translated to "escape from confinement" in the latter part of Article 103, refers to an "escape from a place of physical confinement, such as a jail, prison or detention center" and therefore does not apply to jumping bail. Ex. P – Second Suppl. William Cleary Decl. ¶ 6 [#38-27].[5] But this explanation is of little moment where Petitioners are also charged with harboring or enabling the escape of a person who has "committed a crime." Ex. K – Extradition Req. Transmittal [#41-11].

---

[4] While Petitioners contend that the court has to interpret foreign law "especially in extradition cases," Petitioners cite a non-extradition case for this proposition, <u>Animal Sci. Prod. Inc. v. Hebei Welcome Farm Co.</u>, 138 S. Ct. 1865 (2018), and urge the court to apply Fed. R. Civ. P. 44.1, as cited by the Supreme Court in <u>Animal Sci.</u>, as guidance for interpreting Japanese law. <u>Id.</u> at 1869; Pet'rs' Mem. 12-13 [#38]. Applying <u>Animal Sci</u> in the extradition context appears dubious given the unique framework extradition proceedings operate within and given that federal rules of procedure do not apply, but even under that case, the court would still be required to accord "respectful consideration" and "substantial but not conclusive weight" to a foreign government's interpretation of its own law. <u>Animal Sci.</u>, 138 S. Ct. at 1869, 1875.

[5] Some of Professor Cleary's opinion is based on the assertion that the Requests for Arrest Warrants only used the verb *toso*, not *inpi* and therefore did not apply to the Taylors' alleged conduct. Ex. P – Second Suppl. William Cleary Decl. ¶¶ 8-9 [#38-27]. However, the arrest warrants named the Penal Code offense using the word *han-nin-inpi*, identifying the nature of the offense in Article 103 instead of listing the statute number, as is asserted to be common practice for arrest warrants in Japan. Ex. M – Naoki Watanabe Decl. ¶ 7 [#41-13]. And the Japanese government asserts the arrest warrants included both the word *inpi* as well as *toso*. Ex. N – Suppl. Naoki Watanabe Decl. ¶ 9 [#41-14]. Regardless, the parties do not appear to contest the Magistrate Judge's finding that the challenge to the arrest warrants, and the United States' reliance on those warrants to obtain provisional arrest pursuant to the Treaty, was mooted by the submission of a formal extradition request. <u>See</u> Magistrate Judge's Decision 2-3 (citing <u>Martinez v. United States</u>, 828 F.3d 451, 470 (6th Cir. 2016); <u>United States v. Yee-Chun</u>, 657 F. Supp. 1270, 1271 n.1 (S.D.N.Y. 1987)).

Professor Cleary asserts further that the statute does not apply here because bail jumping is not, on its own, a crime under Japanese law. Ex. C – William Cleary Decl. ¶¶ 10-11, 15 [#38-14]. However, whether "bail jumping" is a crime under Japanese law does not appear to affect the applicability of Article 103 to the Taylors' conduct. Ghosn's alleged crime that positions him as "another person who has . . . committed a crime" are the financial crimes for which he was indicted. See Ex. Q – Masayuki Yoshida Decl. ¶ 7 [#41-17] (stating that the phrase "another person who has . . . committed a crime" is understood to either mean an individual convicted of a crime or an individual being investigated for committing a crime).

Professor Cleary argues further that the verb used in the first part of Article 103 – *inpi* – encompasses both to "harbor" and to "enable the escape of" but that this verb applies "a single concept at describes working against law enforcement authorities' active pursuit of a criminal to arrest him." Ex. P – Second Suppl. William Cleary Decl. ¶ 5 [#38-27]. That *inpi* encompasses a single concept of working against certain law enforcement activities appears consistent with both sides' understanding of the statute. However, the limitation offered by Professor Cleary – that the statute only applies to those who assist someone seeking to "flee from a scene of a crime or an arrest or to escape confinement" – is not persuasive. Pet'rs' Mem. 20 [#38] (citing Ex. C – William Cleary Decl. ¶ 14 [#38-14]; Ex. P - Second Suppl. William Cleary Decl. ¶¶ 5, 10 [#38-27].

While Professor Cleary cites cases where defendants were charged under Article 103 for assisting others evade imminent arrest, his broad assertion that *inpi* can only apply to such circumstances is contradicted by the Japanese legal treatise originally submitted by Petitioners that states that *inpi*, in the sense of an act to "enable the escape," covers acts that hinder "arrest or discovery" by law enforcement, therefore extending to situations when arrest is not law

enforcement's present aim. Ex. H – Japanese Treatise [#2-17] (emphasis added).

The Japanese prosecutor, on the other hand, provides case citations where Article 103 has been interpreted to encompass acts that interfere with the justice system, separate and apart from enabling escape from an imminent arrest. See, e.g., Ex. M – Naoki Watanabe Decl. ¶ 12 [#41-13] (citing case[6] from an Osaka district court in 2000 where defendant was prosecuted and convicted under Article 103 for providing a credit card to a person who had been indicted but was not confined, allowing the person to "abscond" and stay in a hotel under a different name); Ex. N – Suppl. Naoki Watanabe Decl. ¶ 9 [#41-14] (citing case where defendant was convicted under Article 103 after providing SIM card and cash to suspect, who was not fleeing the scene of a crime and who did not yet have an arrest warrant issued); Ex. Q – Masayuki Yoshida Decl. ¶ 8(i) [#41-15] (citing case where defendant was convicted under Article 103 for falsely taking blame for crime committed by another person, who was presumed dead at the time of the defendant's acts). While Professor Cleary seeks to distinguish these cases, see Ex. D – Suppl. William Cleary Decl. ¶ 4 [#38-15], he does not present any evidence, interpreting the Japanese language or interpreting case citations, that compels a finding that the statute cannot apply to assisting a person released on bail evade discovery by law enforcement. See also Ex. H – Japanese Treatise

---

[6] Professor Cleary distinguishes this case by noting that the assistee had his bail revoked before he was helped by the defendant and the assistee was thus subject to arrest. Ex. D – Suppl. William Cleary Decl. ¶ 4c [#38-15]. However, accepting Professor Cleary's interpretation as true, the case still supports the proposition that Article 103 can apply to those who assist others who have already been arrested and indicted evade the justice system. And based on this case, had the Japanese government learned that Ghosn had broken the terms of his bail (by, for example, hiding and fleeing, which was prohibited by the terms of his bail conditions, see Ex. F – Michael Taylor Extradition Req. Part IV, § 4(iii) [#41-6]), before he left Japan, and had the Taylors then assisted him, they could have been charged under Article 103. Thus, Petitioners' argument fails to convince where the mere difference in the hypothetical fact pattern from the actual facts is that the Taylors were effective in swiftly secreting Ghosn out of Japan before the authorities learned of Ghosn's violations of his conditions of bail.

[#2-17] (stating the crimes in the Chapter (Articles 103 and 104), "including the crimes in [Article 103,] are crimes that involve encroaching upon the criminal justice functions of the state in the broad sense of investigation, judgment, enforcement, etc. of criminal cases"). In addition, the more capacious reading of the verb *inpi* is also supported by the Japanese Supreme Court's interpretation of Article 103 as a statute that "intends to punish a person who interferes with the criminal justice system in a broad sense, such as investigations, court proceedings and executions of sentences." Ex. Q – Masayuki Yoshida Decl. ¶ 6 [#41-17] (citing Judgment of Japanese Supreme Court, May 1, 1989, Kei-shu vol. 43, No. 5, p. 405) (emphasis added).

In sum, after considering the statements made by Professor Cleary and the other evidence submitted by the parties, the court finds that Petitioners have not shown a high likelihood of success in their argument the Article 103 does not prohibit interfering with the Japanese criminal justice system by harboring Ghosn and enabling Ghosn to elude discovery by law enforcement and escape judgment from a Japanese court. Accordingly, the Magistrate Judge had reasonable grounds not to grant bail on this basis.

ii.   Lebanese Proceedings

Under Article IV § 2 of the Treaty, "[t]he requested Party may refuse extradition when the person sought has been tried and acquitted, or has undergone the execution of punishment in a third State for the offense for which extradition is requested." Ex. E – Treaty [#41-5]. Petitioners assert that a Lebanese prosecutor who was asked to investigate the matter by a family member of the Taylors "closed the case" which, according to Petitioners, renders a finding of not guilty under Lebanese law. Pet'rs' Mem. 34-35 [#38] (citing Ex. O – Naoum Toubia Farah Decl. ¶¶ 3, 5-6, 8 [#38-26]).

Petitioners argue the Magistrate Judge failed to recognize that "the Lebanese court

system concluded there was no proper charge and the decision is in the same nature as if there had been a trial and acquittal . . . ." Pet'rs' Mem. 34 [#38]. They also accuse the Magistrate Judge of violating the rule of non-inquiry, by allegedly evaluating the fairness of the Lebanese court system. Id. at 34-35.

Petitioners show some internal inconsistency by asserting the Magistrate Judge went too far in inquiring into the fairness of the Lebanese legal system, when they have seemingly invited this court to do exactly that sort of inquiry into the Japanese legal system. However, the Magistrate Judge crossed no such line in his decision and confined his inquiry to the language in the Treaty, the evidence provided by Petitioners and the government's response. The plain language of the Treaty requires a showing that the party facing extradition has been "tried and acquitted" for the conduct he is alleged to have committed in the country seeking extradition. The declaration of Petitioners' counsel does not suggest any sort of adversarial proceeding in Lebanon where Japan could, or did, participate. Instead, at the behest of the Taylors' family, a prosecutor looked into the case and closed it, finding them "not guilty" for the purposes of Lebanese jurisdiction over the alleged crime. This is not, as Petitioners contend, equivalent to a trial and acquittal. Thus, the Magistrate Judge had a reasonable basis for rejecting this ground for the grant of bail.

### iii.   Care for Father-in-Law

Michael Taylor also contends his role as a caregiver to his 81-year old stepfather is a special circumstance, different from what is faced by extraditees generally, because his stepfather has serious health concerns and is vulnerable to COVID-19. Pet'rs' Mem. 33-34 [#38].

However, Petitioners' argument misses the mark. The hardship of incarceration on family members, including those family members who have previously received care from the

incarcerated individual, is a common concern amongst extraditees and prisoners alike. Currently, this is exacerbated by COVID-19, where many family members face novel risks posed by the pandemic. Here, Petitioners do not show that concerns for caring for Michael Taylor's stepfather amount to special circumstances, different from what is faced by other extraditees who also have family who are vulnerable and do not have an extensive support network. Accordingly, the Magistrate Judge reasonably found bail was not warranted on this ground.

### iv.   Risk of COVID-19

The Taylors also raise the risk of COVID-19 as a special circumstance warranting bail, especially in light of Michael Taylor's heightened vulnerability to complications if he contracts the virus.[7] Petitioners have now submitted documentation of Michael Taylor's relevant medical history. See Ex. Q – Dr. Sandeep Jain Letter (stating that partial lobectomy makes Michael Taylor more vulnerable to complications caused by COVID-19) [#38-28]; Ex. R – Dr. M. Anthony Casolaro Decl. ¶¶ 3-5 (stating that a patient with Michael Taylor's health history would require immediate hospitalization if infected by COVID-19) [#38-29]. They also point to the decision in Matter of Extradition of Toledo Manrique, where the presiding magistrate judge granted bail, and release on conditions, to the 74-year old defendant facing extradition based on the risk posed by COVID-19, and contend that the Taylors are more meritorious of release than the party in that case. 2020 WL 1307109, at *1 (N.D. Cal. Mar. 19, 2020); Pet'rs' Mem. 32 [#38]. In response, the government provides citations to court decisions that have denied bail to extraditees despite the threat of COVID-19, even when there is evidence of underlying medical conditions. Gov's Opp'n 24-25 [#41].

---

[7] Petitioners raise a separate argument, discussed below, asserting a due process violation by the government for allegedly showing deliberate indifference to the risk that COVID-19 poses to the Taylors.

Here, under the present circumstances, the court cannot find that the Magistrate Judge's decision to deny bail despite the risk posed by COVID-19 was unreasonable, even with additional evidence of the risk Michael Taylor faces if he contracts the virus. In so finding, the court does not minimize the threat that COVID-19 poses nor the legitimate concern that the Taylors and thousands of other prisoners feel given the uncertainty and danger posed by the pandemic. However, as the Magistrate Judge properly considered, the government has provided evidence that shows a relatively low risk at Norfolk today, including that there are no current cases of the disease at Norfolk, that there have never been any inmates who have tested positive for COVID-19 in the Taylors' housing unit, and that the Department of Corrections have taken a number of steps to minimize risks to inmates and staff at the prison. See Ex. R – Danielle Boomhower Decl. ¶¶ 3-5, 21-22 [#41-18].[8] Based on this record, and in light of the deference to the Magistrate Judge in reviewing a bail decision, the court upholds the Magistrate Judge's decision on this factor.

### v.   Combination of Factors

Finally, Petitioners urge the court to find that, even if no single factor amounts to independent justification for bail, the combination of factors establish special circumstances for release. Pet'rs' Mem. 35 [#38]. However, even in aggregate, and even crediting that the Taylors face hardships by remaining in detention pending their extradition hearing, these circumstances do not overcome the strong presumption against granting bail in extradition cases. Accordingly, as the court finds that the Magistrate Judge had a reasonable basis for denying bail in this matter, their request for bail is denied.

---

[8] Petitioners make no argument that Peter Taylor faces a greater risk from COVID-19 than any other extraditee.

c.   Review of Flight Risk

Though the court has found there are no special circumstances warranting the granting of bail at this time, the court also considers the Petitioners' contention that the Magistrate Judge erred in finding that both Michael and Peter Taylor pose a flight risk. Magistrate Judge's Decision 15-18; Pet'rs' Mem. 25-29 [#38].

The Taylors are charged with implementing a sophisticated plan assisting a person, who paid them, to jump bail. This plan included hiring a private jet in the United Arab Emirates, Peter Taylor making seven trips to Japan to meet with Ghosn multiple times and to set up and participate in Ghosn's escape plan and Michael Taylor flying with an associate to Japan, traveling from the airport to meet Ghosn in Tokyo and then traveling back to an airport hotel with Ghosn, checking with airport staff about security procedures and giving an airport worker a bundle of Japanese yen, secreting Ghosn out of a hotel room in a large box and bringing him aboard the private jet, and flying Ghosn to Turkey. The Taylors do not challenge these allegations. The government, in turn, has offered evidence of substantial payments of money to the Taylors. Thus, at the outset, there is strong evidence that Petitioners have the means, knowledge, and tools to flee the United States even if conditions are put in place to try to prevent such flight.

Michael Taylor argues that he has "no reason or incentive to evade these proceedings" and notes his extensive community ties, familial obligations, and his decision to return to the United States even after Japan had issued an arrest warrant. Pet'rs' Mem. 25-27 [#38]. He also expresses confidence in his ability to defeat the extradition request and states he is unlikely to flee given the relatively short sentence he faces in Japan if extradited and convicted. Id. At the same time, as he concedes, he has strong ties to Lebanon, where he has a home and a branch of

the family business. <u>See</u> Magistrate Judge's Decision 15-18. He has also previously been found a flight risk by courts in Utah in a previous criminal proceeding. Ex. T – Utah Detention Order [#41-20].

Peter Taylor also argues that he does not pose a flight risk, as he does not have the criminal background of his father and because he has strong ties to his Massachusetts community. Pet'rs' Mem. 28 [#38]. However, he does share with his father many of the same reasons for a finding that he poses a flight risk. Peter has strong ties to Lebanon, having lived in the country for the past 15 months after starting a business there and having graduated from college in the country. Mot. to Quash Arrest Warrants 29-30, Michael Taylor MJ Docket (June 8, 2020), ECF No. 17.

The Magistrate Judge noted that the question of risk of flight for both Taylors might be a closer call in routine domestic criminal proceedings. Magistrate Judge's Decision 16. But as the Magistrate Judge explained, this is an extradition case, with a heavier burden on the Taylors to establish they are not flight risks. Here, the charges themselves – with the undisputed factual allegations – undermine a finding that they are not flight risks. While the Taylors may well seek to remain in the United States to fight extradition through available legal channels, they have also shown a blatant disregard for such safeguards in the context of the Japanese legal system and have not established sufficiently that if they find their extradition fight difficult, they will not flaunt the rules of release on bail and flee the country.

Considering the factors together, along with the presumption against bail in extradition cases, the court cannot find that there is a "tolerable bail risk" in releasing the Taylors, <u>United States v. Williams</u>, 611 F.2d 914, 915 (1st Cir. 1979), and, accordingly, finds that the Magistrate Judge had reasonable grounds to deny bail on the basis of a risk of flight.

B.  Emergency Habeas Petition

Petitioners also contend that, beyond the review of the bail decision, this court must separately consider whether the Taylors are currently being held unlawfully. Under 28 U.S.C. § 2241(c)(3), a court must order the petitioner released from custody pursuant to a writ of habeas corpus if it finds that he is "in custody in violation of the Constitution or laws or treaties of the United States." Here, Petitioners assert that as they are being held without probable cause, they should be released pursuant to a writ of habeas corpus. Pet'rs' Mem. 15-23 [#38].

The government responds that questions of extraditability related to the Taylors' detention are not properly before the court. It notes that under 18 U.S.C. § 3184, the Taylors' detention is lawful as Japan has now issued a formal extradition request and the Taylors are being held pending an extradition hearing in front of the Magistrate Judge where he will consider questions of probable cause for extraditability. Gov's Opp'n 11-12 [#41].[9]

The timing of Petitioners' emergency habeas petition is unusual in that it seeks review of the legality of an extradition detention, apart from a bail determination, after a formal extradition request has been received but before a hearing by the Magistrate Judge pursuant to 18 U.S.C. § 3184.[10] The government is correct that the statute allows for "apprehension" during this interim

---

[9] At an extradition hearing, the presiding judicial officer considers six questions: 1) whether the United States is a party to an extradition treaty with the country seeking extradition; 2) whether a criminal charge is pending against the person subject to extradition; 3) whether the charged offense is an extraditable crime under the treaty; 4) whether the person charged is the same person who the government wants extradited; 5) whether an arrest warrant is outstanding; and 6) whether probable cause exists to believe that the person committed the crime charged. Howard, 996 F.2d at 1324 n.1; see also 18 U.S.C. § 3184 ("if on such hearing, [the judicial officer] deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention . . . [the judicial officer] shall certify the same . . . to the Secretary of State . . . .").

[10] Courts have considered challenges to detention on a provisional arrest warrant, prior to receipt of a formal extradition request and brought via a habeas petition before an extradition hearing has been held. See, e.g., Caltagirone v. Grant, 629 F.2d 739, 744-745 (2d Cir. 1980). However, this is not applicable where, as discussed earlier, Petitioners' challenge to the provisional

period after a formal extradition request is received and establishes the normal next step in the

procedure, where the "judicial officer then conducts a hearing to determine if 'he deems the

evidence sufficient to sustain the charge under the provisions of the proper treaty.'" Kin-Hong,

110 F.3d at 109 (quoting 18 U.S.C. § 3184); see also Lo Duca v. United States, 93 F.3d 1100,

1104 (2d Cir. 1996) (stating the extradition hearing is "essentially a preliminary examination to

determine whether a case is made out which will justify the holding of the accused and his

surrender to the demanding nation.") (quoting Ward v. Rutherford, 921 F.2d 286, 287 (D.C. Cir.

1990)). If the Magistrate Judge certifies that the Petitioners are extraditable, the finding is subject

to collateral attack through a habeas petition. Howard, 996 F.2d at 1325.

Nonetheless, even accepting the government's argument that Petitioners must proceed

first before the Magistrate Judge pursuant to 18 U.S.C. § 3184 on questions of extraditability, the

court considers whether, under 28 U.S.C. § 2241, Petitioners' detention is in "violation of the

Constitution, or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see Vardy v.

United States, 529 F.2d 404, 406 (5th Cir. 1976) (finding that while "deferring habeas review

until there is a determination of extraditability is a preferable procedure," "a prior determination

of extraditability . . . is [not] a jurisdictional prerequisite to habeas relief" and the presence of

"unusual circumstances," such as an "excessive and confusing delay in the extradition

proceedings," could be basis of such review); cf. Matter of Extradition of Manzi, 888 F.2d 204,

206 (1st Cir. 1989) (per curiam) (finding, after a magistrate judge had certified the petitioner's

extraditability, "that serious due process concerns may merit review beyond the narrow scope of

inquiry in extradition proceedings.").

---

warrants, and their provisional detention, has been mooted by the receipt of the formal
extradition request. See infra 10 n.5.

Petitioners have not presented grounds or unusual circumstances demonstrating that they are being held unlawfully. Though Petitioners assert that they are being improperly held because Japan has, allegedly, "not charged the Taylors under [Article 103], or with any crime at all," and has not sent charging documents to the United States to support their extradition request, Pet'rs' Mem. 15, 18, 23-24 [#38], evidence from the Japanese government shows otherwise. Japan asserts the normal procedure in extradition cases is to issue arrest warrants, with sufficient information about the alleged crime to establish probable cause and which "authorizes" the arrest of the suspect, and that an extraditee is formally charged once arrested in Japan after extradition. Ex. M – Naoki Watanabe Decl. ¶¶ 5-8 [#41-13]; Ex. N – Suppl. Naoki Watanabe Decl. ¶¶ 2-4, 6 [#41-14].[11] More saliently, the Treaty does not require the submission of charging documents with the formal extradition request. See In re Assarsson, 635 F.2d 1237, 1241 (7th Cir. 1980) ("The existence of formal charges can be reviewable, then, only if the treaty itself conditions extradition for the offenses listed in [the relevant Article] on the existence of formal charges.").

In addition, Petitioners have not shown any unusual circumstances to merit release. It is not contested that the procedures prescribed by 18 U.S.C. § 3184 have been followed, that an extradition hearing has now been scheduled, and that the Taylors are the individuals charged in the Japanese arrest warrants and named in the extradition request. Accordingly, while Petitioners may raise challenges to extraditability, including the alleged procedural defect and their contention that Article 103 does not apply to their conduct, with the Magistrate Judge for his assessment in the first instance, they have not shown their current detention is improper under the Constitution, the Treaty, or 18 U.S.C. § 3184.

---

[11] Professor Cleary disputes this, see Ex. E – Second Suppl. William Cleary Decl. ¶ 3 [#38-27], and Petitioners may raise this argument again at the extradition hearing, but the court cannot find based on the evidence presented by the government that the Taylors have not been charged.

### C.  Due Process and COVID-19

Finally, Petitioners seek release based on an allegation that the government has been deliberately indifferent to the risk they face from COVID-19 and therefore have violated their constitutional rights. Pet'rs' Mem. 36-38 [#38] (citing Grinis v. Spaulding, 2020 WL 2300313, at *2 (D. Mass. May 8, 2020) (stating that a party must show "'that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety,' and second, that the deprivation alleged was 'objectively, sufficiently serious.'") (quoting Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011)); see also Em. Pet. for Habeas Corpus Pursuant to 28 U.S.C. § 2241 ¶¶ 68-74 [#1]. However, Petitioners have not shown a likelihood of success of establishing deliberate indifference. As discussed earlier, the government has provided evidence that the Department of Corrections has taken seriously the risk posed by COVID-19 at Norfolk and have implemented a set of procedures designed to protect prisoners from the spread of the disease. Ex. R – Danielle Boomhower Decl. ¶¶ 3-5, 21-22 [#41-18]. While Petitioners may feel that these measures are insufficient, there is no evidence in the record that the government's response could be construed as actionable indifference. Therefore, the court shall not grant release on this basis.

### III.    Conclusion

Accordingly, for the aforementioned reasons, Petitioners Michael Taylor and Peter Taylor's Motion for Preliminary Injunction [#2] is DENIED and their Emergency Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Injunctive Relief [#1] is DENIED.

IT IS SO ORDERED.

August 7, 2020                                     /s/ Indira Talwani
                                                   United States District Judge