# Exhibit A

DISTRICT OF COLUMBIA, ss:

## DECLARATION OF KAREN K. JOHNSON

I, Karen K. Johnson, declare and say as follows:

1.  I am an Assistant Legal Adviser in the Office of the Legal Adviser for the Department of State, Washington, DC.  This office has responsibility for extradition requests, and I am charged with the extradition case of Michael L. Taylor.  I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2.  The relevant and applicable treaty provisions in full force and effect between the United States and Japan are found in Treaty on Extradition between the United States of America and Japan, signed on 3 March 1978 (the "Treaty"). A copy of the Treaty is attached to this declaration.

3.  In accordance with the provisions of the Treaty, the Embassy of Japan has submitted Diplomatic Note No. P59, dated 29 June 2020, formally requesting the extradition of Michael L. Taylor. A copy of the diplomatic note is attached to this declaration.

4.  In accordance with Article XIV(1) of the Treaty, the Government of the United States of America provides legal representation in U.S. courts for the Government of Japan in its extradition requests, and the Government of Japan provides legal representation in its courts for extradition requests made by the United States.

-2-

5.  The offense for which extradition is sought is covered under Article II of the Treaty and by the Schedule annexed to the Treaty.

6.  The documents in support of the extradition request submitted by the Embassy of Japan were certified on 25 June 2020 by Karin M. Lang, Minister-Counselor for Consular Affairs and Consul General at the United States Embassy in Tokyo, in accordance with 18 U.S.C. § 3190. Ms. Lang, at the time of her certification, was the principal consular officer of the United States in Japan.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on June 29 , 2020.

KAREN K. JOHNSON

Attachments:
   1.  Copy of Note
   2 . Copy of Treaty

**EMBASSY OF JAPAN**
2520 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C.  20008
(202) 238-6700

P59

## Note Verbale

The Embassy of Japan in the United States of America presents its compliments to the Department of State and has the honor to refer to the Note Verbale No. P 41, dated May 1, 2020 from the Embassy of Japan requesting the provisional detention of Michael L. Taylor, and the Extradition Treaty between Japan and the United States of March 3, 1978, and to request the extradition of Michael L. Taylor for the offense of Enabling the escape of criminals. The offense and the detail of the request are described in the documents attached hereto. The offense is covered by Article II, paragraph 1 of the Treaty and clause 38 of the Schedule annexed hereto.

The Embassy of Japan in the United States of America avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.

Washington D.C., June 29, 2020



TREATIES AND OTHER INTERNATIONAL ACTS SERIES 962

# EXTRADITION

Treaty, With Exchange of
Notes, Between the
UNITED STATES OF AMERICA
and JAPAN

Signed at Tokyo March 3, 1978



E

*Treaty, with exchange of no*
*Ratification advised by the S*
  *November 30, 1979;*
*Ratified by the President*
  *December 13, 1979;*
*Ratified by Japan February*
*Ratifications exchanged at*
*Proclaimed by the Preside*
  *March 4, 1980;*
*Entered into force March 26*

## NOTE BY THE DEPARTMENT OF STATE

Pursuant to Public Law 89–497, approved
July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)—

". . . the Treaties and Other International Acts
Series issued under the authority of the Secretary of
State shall be competent evidence . . . of the treaties,
international agreements other than treaties, and proc-
lamations by the President of such treaties and inter-
national agreements other than treaties, as the case
may be, therein contained, in all the courts of law
and equity and of maritime jurisdiction, and in all the
tribunals and public offices of the United States, and
of the several States, without any further proof or
authentication thereof."

By the President of

A PR(

Considering that:
The Treaty on Extradition
and Japan, together with a re
Tokyo on March 3, 1978, the
nese languages, is hereto anne
The Senate of the United
November 30, 1979, two-thir
therein, gave its advice and
together with a related excha
The Treaty, together with
by the President of the Unit
1979, in pursuance of the adv
duly ratified on the part of Ja
It is provided in Article XY
enter into force on the thirtie
the instruments of ratification
The instruments of ratifica
Washington on February 25
together with the exchange of
1980;

62–682 O—80

*For sale by the Superintendent of Documents, U.S. Government Printing Office,
Washington, D.C. 20402. Subscription Price: $110; $27.50 additional
for foreign mailing. Single copies vary in price. This issue $3.*

EX-Taylor, M.-00005

# JAPAN

## Extradition

*Treaty, with exchange of notes, signed at Tokyo March 3, 1978;*
*Ratification advised by the Senate of the United States of America*
  *November 30, 1979;*
*Ratified by the President of the United States of America*
  *December 13, 1979;*
*Ratified by Japan February 19, 1980;*
*Ratifications exchanged at Washington February 25, 1980;*
*Proclaimed by the President of the United States of America*
  *March 4, 1980;*
*Entered into force March 26, 1980.*

———————

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition between the United States of America and Japan, together with a related exchange of notes, was signed at Tokyo on March 3, 1978, the text of which, in the English and Japanese languages, is hereto annexed;

The Senate of the United States of America by its resolution of November 30, 1979, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty, together with a related exchange of notes;

The Treaty, together with a related exchange of notes, was ratified by the President of the United States of America on December 13, 1979, in pursuance of the advice and consent of the Senate, and was duly ratified on the part of Japan;

It is provided in Article XVI of the Treaty that the Treaty shall enter into force on the thirtieth day after the date of the exchange of the instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Washington on February 25, 1980; and accordingly the Treaty, together with the exchange of notes, will enter into force on March 26, 1980;

EX-Taylor, M.-00006

2

Now, THEREFORE, I, Jimmy Carter, President of the United States of America, proclaim and make public the Treaty, together with a related exchange of notes, to the end that they shall be observed and fulfilled with good faith on and after March 26, 1980, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this fourth day of March in the year of our Lord one thousand nine hundred eighty and of the Independence of the United States of America the two [SEAL]   hundred fourth.

JIMMY CARTER

By the President:
CYRUS VANCE
*Secretary of State*

TREATY ON EXTRA
THE UNITED STATES O

The United States of

Desiring to make mor
ation of the two countr
of crime,

Have agreed as follo

ARTIC

Each Contracting Par
tradite to the other Par
the provisions of this '
in its territory and sou
for prosecution, for tr
punishment for any offer
graph 1 of Article II.
committed outside the te
questing Party, the cond
paragraph 1 of Article V
be applied.

ARTICLE

1. Extradition shall be
with the provisions of t
offense listed in the Sc
Treaty, which forms an i
Treaty, when such an off
the laws of both Contrac
by life imprisonment, or
liberty for a period of
or for any other offense
is punishable by the fed

EX-Taylor, M.-00007

3

TREATY ON EXTRADITION BETWEEN
THE UNITED STATES OF AMERICA AND JAPAN

The United States of America and Japan,

Desiring to make more effective the cooperation of the two countries for the repression of crime,

Have agreed as follows:

### ARTICLE I

Each Contracting Party undertakes to extradite to the other Party, in accordance with the provisions of this Treaty, any person found in its territory and sought by the other Party for prosecution, for trial, or to execute punishment for any offense specified in paragraph 1 of Article II. When the offense was committed outside the territory of the requesting Party, the conditions specified in paragraph 1 of Article VI, inter alia, shall be applied.

### ARTICLE II

1. Extradition shall be granted in accordance with the provisions of this Treaty for any offense listed in the Schedule annexed to this Treaty, which forms an integral part of this Treaty, when such an offense is punishable by the laws of both Contracting Parties by death, by life imprisonment, or by deprivation of liberty for a period of more than one year; or for any other offense when such an offense is punishable by the federal laws of the United

TIAS 9625

EX-Taylor, M.-00008

4

States and by the laws of Japan by death, by life imprisonment, or by deprivation of liberty for a period of more than one year.

Extradition shall be granted for any offense of which one of the above-mentioned offenses is a substantial element, even if, for purposes of granting federal jurisdiction to the United States Government, interstate transporting, or the use of the mails or other interstate facilities is also an element of the specific offense.

2. In the case in which the person sought has been sentenced by a court of the requesting Party for any offense to which paragraph 1 applies, extradition shall be granted only if the person has been sentenced to death or if the sentence remaining to be served is at least four months.

## ARTICLE III

Extradition shall be granted only if there is sufficient evidence to prove either that there is probable cause to suspect, according to the laws of the requested Party, that the person sought has committed the offense for which extradition is requested or that the person sought is the person convicted by a court of the requesting Party.

## ARTICLE IV

1. Extradition shall not be granted under this Treaty in any of the following circumstances:

(1) When the offense for which extradition is requested is a political offense or when

EX-Taylor, M.-00009

5

it appears that the request for extradition
is made with a view to prosecuting, trying or
punishing the person sought for a political
offense.  If any question arises as to the
application of this provision, the decision
of the requested Party shall prevail.

(2) When the person sought has been prose-
cuted or has been tried and convicted or ac-
quitted by the requested Party for the offense
for which extradition is requested.

(3) In the case of a request for extradition
emanating from Japan, when the prosecution  of
the offense for which extradition is requested
would be barred by lapse of time, under the
laws of the United States.

(4) In the case of a request for extradition
emanating from the United States, when the
imposition or the execution of punishment for
the offense for which extradition is requested
would be barred by reasons prescribed under
the laws of Japan, including lapse of time;

      (a) if Japan were to have jurisdiction
         over the offense, or

      (b) if Japan in fact has such juris-
         diction and the trial were to be
         held in its court.

2. The requested Party may refuse extradition
when the person sought has been tried and
acquitted, or has undergone the execution of
punishment in a third State for the offense
for which extradition is requested.

EX-Taylor, M.-00010

6

3. When the person sought has been prosecuted or has not undergone the execution of punishment in the territory of the requested Party for an offense other than that for which extradition is requested, the requested Party may defer his surrender until the conclusion of the trial and the full execution of any punishment he may be or may have been imposed.

## ARTICLE V

The requested Party shall not be bound to extradite its own nationals, but it shall have the power to extradite them in its discretion.

## ARTICLE VI

1. When the offense for which extradition is requested has been committed outside the territory of the requesting Party, the requested Party shall grant extradition if the laws of that Party provide for the punishment of such an offense committed outside its territory, or if the offense has been committed by a national of the requesting Party.

2. For the purposes of this Treaty, the territory of a Contracting Party means all areas of land, water and airspace under the sovereignty or authority of that Contracting Party, including any vessel registered in that Contracting Party, and any aircraft registered in that Contracting Party provided that the aircraft is in flight. For the purposes of this provision an aircraft shall be considered

7

to be in flight at any time from the moment
when all its external doors are closed follow-
ing embarkation until the moment when any such
door is opened for disembarkation.

### ARTICLE VII

1. The requesting Party shall not, except in
any of the following circumstances, detain,
prosecute, try nor punish a person surrendered
under this Treaty for an offense other than
that for which extradition has been granted,
nor extradite him to a third State, provided
that these stipulations shall not apply to
offenses committed after the extradition:

   (1) When he has left the territory of the
requesting Party after his extradition and
has voluntarily returned to it.

   (2) When he has not left the territory of
the requesting Party within forty-five days
from the day when he has been set free to do
so.

   (3) When the requested Party has consented
to his detention, prosecution, trial or punish-
ment for an offense other than that for which
extradition has been granted or to his ex-
tradition to a third State.

2. The requesting Party may detain, prosecute,
try or punish the person surrendered under
this Treaty for any offense for which ex-
tradition is to be granted in accordance with
paragraph 1 of Article II, in so far as such

EX-Taylor, M.-00012

8

measures are instituted upon the basic facts which constitute the offense for which extradition has been granted.

## ARTICLE VIII

1. The request for extradition shall be made through the diplomatic channel.

2. The request for extradition shall be accompanied by:

    (a) Documents which describe the identity of the person sought;

    (b) A statement of the facts of the case;

    (c) The texts of the laws describing the essential elements and the designation of the offense for which extradition is requested;

    (d) The texts of the laws describing the punishment for the offense; and

    (e) The texts of the laws describing the time limit on the prosecution or the execution of punishment for the offense.

3. When the request for extradition relates to a person who has not yet been convicted, it shall be accompanied by:

    (a) A copy of the warrant of arrest issued by a judge or other judicial officer of the requesting Party;

    (b) Evidence proving that the person sought is the person to whom the warrant of arrest refers; and

EX-Taylor, M.-00013

9

    (c) Such evidence as would provide probable cause to suspect, according to the laws of the requested Party, that the person sought has committed the offense for which extradition is requested.

4. When the request for extradition relates to a convicted person, it shall be accompanied by:

    (a) A copy of the judgment of conviction imposed by a court of the requesting Party;

    (b) Evidence proving that the person sought is the person to whom the conviction refers; and

    (c) (i) A copy of the warrant of arrest, if the convicted person was not sentenced; or

       (ii) A copy of the sentence imposed and a statement showing to what extent the sentence has not been carried out, if the convicted person was sentenced.

5. The request for extradition shall be accompanied by all other information as may be required by the laws of the requested Party.

6. All the documents to be submitted by the requesting Party in accordance with the provisions of this Treaty shall be duly certified as required by the laws of the requested Party, and accompanied by a duly certified translation in the language of the requested Party.

EX-Taylor, M.-00014

10

7. If the executive authority of the requested Party considers that the information furnished in support of the request for extradition of a person sought is not sufficient to fulfill the requirements of this Treaty, that authority shall so notify the requesting Party, in order to enable the requesting Party to submit additional information before that authority determines whether to submit the request to a court of the requested Party. That authority may fix a time limit for the submission of such information.

## ARTICLE IX

1. In case of urgency the requested Party may provisionally detain the person to be sought when the requesting Party submits an application for provisional detention through the diplomatic channel, notifying the requested Party that a warrant of arrest has been issued or a sentence imposed for an offense for which extradition is to be granted in accordance with paragraph 1 of Article II and assuring the requested Party that a request for extradition will be made. The application for provisional detention shall describe the identity of the person to be sought and the facts of the case, and shall contain such further information as may be required by the laws of the requested Party.

2. If the requesting Party fails to present the request for extradition within forty-five days from the date of provisional detention,

EX-Taylor, M.-00015

11

the person detained shall be set at liberty,
provided that this stipulation shall not
prevent the requested Party from instituting
a proceeding with a view to extraditing the
person sought if a request for extradition is
subsequently received.

## ARTICLE X

When a person sought advises a court or
other competent authorities of the requested
Party that he waives his rights to internal
procedures required for his extradition, that
Party shall take all necessary measures to
expedite the extradition to the extent per-
mitted under its laws.

## ARTICLE XI

The requested Party, upon receiving requests
from the other Contracting Party and from a
third State or States for the extradition of
the same person either for the same offense
or for different offenses, shall determine to
which of the requesting States it will extra-
dite that person.

## ARTICLE XII

1. The requested Party shall promptly communi-
cate to the requesting Party through the diplo-
matic channel the decision on the request for
extradition.

2. If an order to surrender has been issued by

EX-Taylor, M.-00016

12

the competent authority of the requested Party and the requesting Party fails to receive the person sought within such time as may be stipulated by the laws of the requested Party, it may set him at liberty and may subsequently refuse to extradite that person for the same offense.  The requesting Party shall promptly remove the person received from the territory of the requested Party.

ARTICLE XIII

To the extent permitted under the laws of the requested Party and subject to the right of third parties, all articles acquired as a result of the offense or which may be required as evidence shall be surrendered if extradition is granted.

ARTICLE XIV

1. The requested Party shall make all necessary arrangements with respect to internal procedures, including the detention of the person sought, arising out of the request for extradition and bear the expenses by reason thereof, provided that expenses incurred for the transportation of the person ordered to be surrendered shall be paid by the requesting Party.

2. The requested Party shall not make any pecuniary claim against the requesting Party by reason of any compensation paid to a person sought for the damages caused to him by his

TIAS 9625

13

detention, examination or surrender under the
provisions of this Treaty.

ARTICLE XV

1. Each Contracting Party shall grant to the
other Party the right to transport through
its territory a person surrendered to the
other Party by a third State on request made
through the diplomatic channel except in any
of the following circumstances:

(1) When the criminal act which has given
rise to the extradition would not constitute
an offense under the laws of the Contracting
Party through which transit is requested.

(2) When the criminal act which has given
rise to the extradition is a political offense
or when it appears that the request for extra-
dition is made with a view to prosecuting,
trying or punishing the person surrendered
for a political offense.  If any question
arises as to the application of this provision,
the decision of the Contracting Party through
which transit is requested shall prevail.

(3) When reasons of public order are opposed
to transit.

2. In the case above, the Contracting Party to
which extradition has been granted shall re-
imburse the Contracting Party through whose
territory transportation has been made for
any expenses incurred by the latter in con-
nection with such transportation.

TIAS 9625

EX-Taylor, M.-00018

14

### ARTICLE XVI

1. This Treaty shall be subject to ratification and the instruments of ratification shall be exchanged at Washington as soon as possible. It shall enter into force on the thirtieth day after the date of the exchange of the instruments of ratification.[1]

2. This Treaty shall also apply to any offense specified in paragraph 1 of Article II committed before this Treaty enters into force.

3. On the entry into force of this Treaty, the Treaty of Extradition signed at Tokyo on April 29, 1886[2] and the Supplementary Convention of Extradition signed at Tokyo on May 17, 1906[3] between the United States of America and Japan shall terminate, provided that any extradition case pending in the requested Party at the time this Treaty enters into force shall remain subject to the procedures specified in the above-mentioned Treaty of Extradition and the Supplementary Convention of Extradition.

4. Either Contracting Party may terminate this Treaty at any time by giving six months' written notice to the other Party.

IN WITNESS WHEREOF, the undersigned, being duly authorized thereto by their respective Governments, have signed this Treaty.

DONE in duplicate, in the English and Japanese languages, both equally authentic,

---

[1] Mar. 26, 1980.
[2] TS 191 ; 24 Stat. 1015.
[3] TS 454 ; 34 Stat. 2951.

15

at Tokyo, this third day of March, one
thousand nine hundred and seventy-eight.


For the United States of America:

*Michael J. Mansfield* [1]

For Japan:

*Sunao Sonoda* [2]


[SEAL]                    [SEAL]

---

[1] Michael J. Mansfield.
[2] Sunao Sonoda.

62-682 O - 80 - 3 : QL 3                    TIAS 9625

EX-Taylor, M.-00020

16

## SCHEDULE

1. Murder, manslaughter, including causing death through solicitation or assistance

2. Assault made with intent to commit murder

3. Malicious wounding, injury or assault

4. Illegal abortion

5. Abandonment which causes bodily harm or death

6. An offense relating to kidnapping, abduction or unlawful arrest or imprisonment

7. Threat

8. Rape, indecent assault

9. An offense relating to pandering or prostitution

10. An offense relating to obscene material

11. Bigamy

12. Burglary

13. Robbery

14. Larceny

15. Extortion, blackmail

TIAS 9625

17

16. Fraud (obtaining property, money, valuable securities, or other things of economic value by false pretenses or by fraudulent means)

17. Embezzlement, breach of trust by a person who is in a fiduciary relationship

18. An offense relating to unlawfully obtained property

19. An offense relating to damage of property, documents, or facilities

20. An offense against the laws relating to protection of industrial property or copyright

21. Obstruction of business by violence or threat

22. Arson, burning through gross negligence

23. Leading, directing or inciting a riot

24. An offense against the laws relating to protection of public health

25. An offense endangering public safety through explosion, water power or other destructive means

26. Piracy according to the law of nations

TIAS 9625

EX-Taylor, M.-00022

18

27. An offense relating to unlawful seizure or exercise of control of trains, aircraft, vessel or other means of transportation

28. An offense interfering with or endangering the normal operation of trains, aircraft, vessel or other means of transportation

29. An offense against the laws relating to the control of explosive substances, incendiary devices or dangerous or prohibited weapons

30. An offense against the laws relating to the control of narcotic drugs, cannabis, psychotropic drugs, cocaine, or their precursors or derivatives, or other dangerous drugs or chemicals

31. An offense against the laws relating to the control of poisons or other substances injurious to health

32. An offense relating to forgery or counterfeiting

33. An offense against the laws relating to the control of gambling or lotteries

34. Assault or threat upon public official relating to the execution of his duty

35. An offense relating to false statements

36. An offense relating to perjury

19

37. An offense relating to escape from confinement of a person detained or serving a sentence for an offense specified in paragraph 1 of Article II of this Treaty

38. An offense relating to obstruction of justice, including harboring criminals and suppressing or destroying evidence

39. Bribery

40. An offense relating to abuse of official authority

41. An offense against the laws relating to the control of public elections or political contributions and expenditures

42. An offense relating to willful evasion of taxes and duties

43. An offense against the laws relating to the control of companies or other corporations

44. An offense against the laws relating to bankruptcy or rehabilitation of a company

45. An offense against the laws relating to prohibition of private monopoly or unfair business transactions

46. An offense against the laws relating to the control of exportation and importation or international transfer of funds

20

47.  Attempt, conspiracy, assistance, solici-
     tation, preparation for, or participation
     in, the commission of any of the above-
     mentioned offenses

EX-Taylor, M.-00025

U.S. Department of State

### CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
### EVIDENCE ACCOMPANYING REQUISITIONS IN
### THE UNITED STATES FOR EXTRADITION
### AMERICAN FOREIGN SERVICE



|  | Tokyo, Japan | 06-25-2020 |
|---|---|---|

Place and Date *(mm-dd-yyyy)*

Minister-Counselor for Consular Affairs
and Consul General

_____Karin M. Lang_____
            Name                                                    Title

of the United States of America at          Tokyo, Japan

hereby certify that the annexed papers, being          supporting documents

proper to be used upon an application for the extradition from the United States of America

Michael Taylor

charged with the crime of          Enabling the escape of criminals

alleged to have been committed in          Japan

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of Japan

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

this     twenty-fifth     day of          June, 2020

                                                       Month and Year

                                                      _____
                                                               Signature

                                         Karin M. Lang, Minister-Counselor for
                                         Consular Affairs and Consul General

                                         Type Name and Title of Certifying Officer
                                               of the United States of America.

DS-0036
08-2019

CERTIFICATION


I,  MATSUMOTO Rei,  Director of the International Affairs Division, Criminal Affairs Bureau,  Ministry of Justice of Japan,  hereby certificate that attached hereto is the original Request for Extradition of a Criminal to the appropriate Legal Authorities in the United States of America made by the officer of the Government.

All the documents submitted herein are duly certified and authenticated together with certified translations in English.


June 25, 2020




MATSUMOTO Rei (Ms. )

Director

International Affairs Division

Criminal Affairs Bureau

Ministry of Justice

Japan

CERTIFICATE OF TRANSLATION

I, Ryozo KITAJIMA, certify that I am competent to translate these documents from Japanese to English, and that the translation is true and accurate, to the best of my ability.

Executed on June 25, 2020

北嶋　良蔵

Ryozo KITAJIMA
Public Prosecutor
Special Investigation Department
Tokyo District Public Prosecutors Office

I, Rei MATSUMOTO, certify that the said officer has sufficient ability to translate these documents.

Executed on June 25, 2020

松本　麗

Rei MATSUMOTO
Director of International Affairs Division
Criminal Affairs Bureau
Ministry of Justice

June 25, 2020

To: The Competent Authorities in the United States of America

Chief Public Prosecutor,
Tokyo District Public Prosecutors Office of Japan

山 上 秀明

## Request for Extradition of Michael L. Taylor

The Tokyo District Public Prosecutors Office has been searching for the fugitive Michael L. Taylor to execute the arrest warrant on the allegation of enabling the escape of criminals, and aiding and abetting the violation of the Immigration Control and Refugee Recognition Act, and we hereby request the U.S. competent authorities extradite him in accordance with the Treaty on Extradition between Japan and the United States of America.

Part I.   Personal Identification Information

      Name:          Michael L. Taylor (Male)
      Nationality:    American

Part II.   Summary of the Case

The suspects Michael L. Taylor (hereinafter "Michael Taylor"), Peter Maxwell Taylor (hereinafter "Peter Taylor") and George-Antoine Zayek (hereinafter "Zayek"), in conspiracy with each other, provided assistance and enabled the escape of Carlos Ghosn Bichara (hereinafter "Ghosn"). Michael Taylor, Peter Taylor, and Zayek provided assistance and enabled Ghosn's escape from Japan to Republic of Lebanon via Republic of Turkey, on December 29, 2019, by-

- Receiving the luggage, which was delivered from Ghosn's house to the Grand Hyatt Tokyo, and providing a place for him to change his clothes;
- Escorting Ghosn from Grand Hyatt Tokyo to the Star Gate Hotel Kansai Airport (hereinafter "Star Gate Hotel") in Osaka;
- In Star Gate Hotel, hiding Ghosn inside a black musical equipment box;
- Travelling from Star Gate Hotel to the premium gate called "Tamayura" at the Kansai International Airport;
- Having the employees of the airport, who had no knowledge of their plan, clear the embarkation procedure with Ghosn hidden inside the black box and putting the black box on board of the jet (Flight TCTSR) operated by MNG Jet; and
- Departing the airport with Ghosn by Flight TCTSR and then leaving Japan's territory.

Part III.  Details of Applicable Law

1.  Enabling the escape of criminals

Penal Code
Article 103   A person who harbors or enables the escape of another person who has either committed a crime punishable with a fine or greater punishment or has escaped from confinement shall be punished by imprisonment with work for not more than 3 years or a fine of not more than 300,000 yen.
Article 60   Two or more persons who commit a crime in joint action are all principals.

2.  Interpretation of Article 103

As explained in more detail in the Declaration of Naoki Watanabe, attached to this request as Exhibit #30, the conduct of Michael Taylor constitutes the crime of enabling the escape of criminals pursuant to Article 103 of the Penal Code, which is one of the offenses for which the Tokyo District Court issued a warrant for his arrest and for which Japan seeks his extradition from the United States.

In this case, Michael Taylor, Peter Taylor and Zayek provided assistance and enabled Ghosn's escape in violation of Article 103, by the acts described in Parts II and IV.

3.  Statute of limitations

Code of Criminal Procedure
Article 250 Paragraph (2)   The statute of limitations is completed upon the lapse of the following time periods with regard to crimes other than crimes causing the death of a person and punishable with imprisonment or imprisonment without work or a greater punishment:
(i) ~ (v)    (Omitted)
(vi)   3 years for offenses punishable with imprisonment or imprisonment without work whose maximum term is less than 5 years or with a fine
Article 255 Paragraph (1)   If an offender is outside Japan….., the statute of limitations is suspended during the period when the offender is outside Japan…..

4.  Additional relevant information

The statute of limitations has been suspended on and from December 29, 2019 since Michael Taylor himself left Japan when he committed the crime of enabling the escape of criminals on that day.

Part IV.  Supplemental Explanation of Facts

1.      From 2001 through 2018, Ghosn served as Chairman of the Board of Directors and/or Chief Executive Officer (CEO) of Nissan Motor Co., Ltd. ("Nissan").

Nissan is a Japanese automobile manufacturer with securities that trade on the Tokyo Stock Exchange.

2.      During his time in Nissan, Ghosn committed following offenses:

(i)      Ghosn, in conspiracy with others including Gregory Lewis Kelly, who was the representative director of Nissan, in regard to the business of the Nissan, on five occasions within the period from June 2011 to June 2015, submitted Annual Reports of five consolidated fiscal years (from April 2010 to March 2015) which falsely stated the compensation of Ghosn for these fiscal years as approximately 4,987,000,000 JPY in total, whereas his fixed compensation for these fiscal years indeed were approximately 9,855,000,000 JPY in total (Violation of Financial Instruments and Exchange Act[1]);

(ii)     Ghosn, in conspiracy with others including Gregory Lewis Kelly, who was the representative director of Nissan, in regard to the business of the Nissan, on three occasions within the period from June 2016 to June 2018, submitted Annual Reports of three consolidated fiscal years (from April 2015 to March 2018) which falsely stated the compensation of Ghosn for these fiscal years as approximately 2,904,000,000 JPY in total, whereas his fixed compensation for these fiscal years indeed were approximately 7,175,000,000 JPY in total (Violation of Financial Instruments and Exchange Act);

(iii)    Ghosn, being requested by the bank to provide additional collateral for a coupon swap agreement entered into between his asset management company and that bank since a heavy appraisal loss had occurred on that agreement, transferred the status of a party to that agreement from that asset management company to Nissan on October 31, 2008, and accordingly made Nissan liable for the loss incurred under that agreement including the appraisal loss of approximately 1,850,400,000 JPY incurred on that day, thus a director committed an act in breach of his duty and caused financial damages to Nissan for the purpose of promoting his own interest (Violation of Companies Act[2]);

(iv)     Ghosn, on four occasions within the period from June 29, 2009 to March 27, 2012, transferred total amount of 14,700,000 USD from the bank accounts of Nissan Middle East F.Z.E. (hereinafter "NMEF"), a consolidated subsidiary of Nissan, to the bank account of a certain company, located in the Kingdom of Saudi Arabia and managed by Khaled Ahmed Al Juffali (hereinafter "Juffali"), one of Ghosn's friends. By making these transfers, Ghosn, as a director, committed an act in breach of his duty

---

[1] Financial Instruments and Exchange Act
Article 24(1)      When Securities...issued by a company fall under any of the categories specified in the following items, the company shall submit, for each business year, a report stating the trade name of the company, financial conditions of the Corporate Group to which the company belongs and of the company, other important matters concerning the company's business and other matters specified by a Cabinet Office Ordinance as necessary and appropriate for the public interest or protection of investors (hereinafter referred to an "Annual Securities Report") to the Prime Minister within three months after the end of that business year...pursuant to the provisions of a Cabinet Office Ordinance.
      (i)      Securities listed in a Financial Instruments Exchange
Article 197      Any person who falls under any of the following items shall be punished by imprisonment with work for not more than ten years or by a fine of not more than ten million yen, or both.
      (i)      a person who has submitted any of the following documents containing misstatement on any important matters;..., Annual Securities Reports...thereof under Article 24(1)
[2] Companies Act
Article 960(1)      When any one of the following persons, for the purpose of promoting such person's own interest or the interest of a third party, or inflicting damage on a Stock Company, commits an act in breach of such person's duties and causes financial damages to such Stock Company, such person is punished by imprisonment for not more than ten years or a fine of not more than ten million yen, or both:
      (iii)      a director, accounting advisor, company auditor, and executive officer

and caused financial damages to Nissan for the purpose of promoting his own interest and the interest of a third party (Violation of Companies Act); and,

(v)     Ghosn, on July 25, 2017 and on July 30, 2018, transferred from the bank account of NMEF to the bank account of Suhail Bahwan Automobiles LLC (hereinafter "SBA"), a company located in the Sultanate of Oman, the total amount of 10,000,000 USD, 5,000,000 USD of which was intended for Ghosn's personal profit. By making these transfers, Ghosn, as a director, committed an act in breach of his duty and caused financial damages to Nissan for the purpose of promoting his own interest (Violation of Companies Act).

3.     The above offense has been investigated by Tokyo District Public Prosecutors Office ("TPPO"). The major timelines of this investigations are;

(i) On November 19, 2018, TPPO arrested Ghosn for the count 2(i);
(ii) On December 10, 2018, TPPO indicted Ghosn for the count 2(i) and rearrested Ghosn for the count 2(ii);
(iii) On December 21, 2018, TPPO rearrested Ghosn for the counts 2(iii)(iv);
(iv) On January 11, 2019, TPPO indicted Ghosn for the counts 2(ii)(iii)(iv);
(v) On April 4, 2019, TPPO rearrested Ghosn for the count 2(v);
(vi) On April 22, 2019, TPPO indicted Ghosn for the count 2(v).

4.     Ghosn was detained for certain periods of time from November 19, 2018. However, on March 5, 2019, and on April 25, 2019, the Tokyo District Court issued orders releasing him on bail.

    The bail condition included following provisions;

(i) Ghosn must live in his designated house;
(ii) When summoned, Ghosn must report to the designated place at the designated time (if he has justifiable reasons not to be able to report, he must notify the court of the reasons in advance);
(iii) Ghosn must not hide or flee, or do anything which looks suspicious to tamper evidence;
(iv) If Ghosn take domestic trips for 3 days or more, Ghosn must get approval from the court in advance; and,
(v) Ghosn must not take overseas trips.

    At the time of his escape from Japan, dated on December 29, 2019, these cases were still pending trial at Tokyo District Court and his bail conditions did not change.

5.     Basic facts for Ghosn's escape from Japan are:

- Ghosn left the house (designated by the court under bail conditions), pretending just to be taking a walk;
- Ghosn traveled to Osaka, deceiving any observer by dropping by the hotel in Tokyo and changing his clothes;
- In the hotel room in Osaka close to the Kansai International Airport, Ghosn hid inside a box brought by Michael Taylor and Zayek, who pretended to be

- musicians[3];
- They bypassed embarkation procedure, by using the private jet whose luggage is unlikely to be checked; and
- They departed the airport on the same day.

In order to execute the above actions, the suspects coordinated on the following actions, which are corroborated with evidence including a number of surveillance cameras installed on their route and witness statements.

6.  Peter Taylor's immigration records (January 20, 2020)[4] show that, in the past year, Peter Taylor stayed in Japan from July 8 to 11, from August 21 to 23, and from December 6 to 7, 2019. He met Ghosn on July 8, 10, 11, August 21, 22, 23, and December 6, 2019[5].

7.  On December 28, 2019, which was the day before the escape, Peter Taylor entered into Japan and checked into Room 933 of Grand Hyatt Tokyo at approximately 11:49am[6]. After check-in, he met Ghosn for about 1 hour[7] and gave him the room key[8].

8.  At 10:10am on December 29, 2019 which was the day of escape, the private jet which Michael Taylor and Zayek were on board landed at the Kansai International Airport from Dubai. They entered into Japan with their luggage including two large black boxes[9]. At approximately 11:07am, both of them checked into Star Gate Hotel close to the airport[10] and placed their luggage including the two large black boxes in room 4609. Then, at 11:50am, they departed the hotel, went to Shin-Osaka Station and, at 12:56pm, took a bullet train (Shinkansen) for Tokyo[11].

9.  At 1:19pm, Ghosn came home by Toyota Alphard which he always used for his travel. Ghosn went back and forth between inside the house and the garage to take out five suitcases from inside of the house to the garage[12].

---

[3] An employee of the private lounge in Kansai International Airport gave a statement that Michael Taylor and Zayek told the employees of Kansai International Airport that they were musicians [Exhibit #21].

[4] [Exhibit #16]

[5] Except for December 6, 2019, Ghosn's meeting records, which were made as a condition of bail, show his meetings with Peter Taylor [Exhibit #11]. With respect to December 6, surveillance cameras installed in Grand Hyatt Tokyo show their meeting [Exhibit #6].

[6] A hotel receptionist identified Peter Taylor at the check-in counter by his passport (the hotel register of Grand Hyatt Tokyo [Exhibit #8, #9], the receptionist's statement [Exhibit #24]).

[7] Surveillance cameras installed in Grand Hyatt Tokyo [Exhibit #4] and the statement of Ghosn's driver that dropped Ghosn off at Grand Hyatt Tokyo [Exhibit #26]

[8] When Ghosn went to Room 933 of Grand Hyatt Tokyo on December 29, he alone was able to operate the elevator (surveillance cameras installed in Grand Hyatt Tokyo [Exhibit #2, #4]), which required a room key (the receptionist's statement [Exhibit #24]). Therefore, it is obvious that he had the room key at the time. Ghosn had no other option but to get the room key from Peter Taylor, who stayed at the room. This is only when Peter Taylor met with Ghosn after Peter Taylor's check-in.

[9] Interview results report [Exhibit #18], surveillance cameras installed in the Kansai International Airport [Exhibit #1]. For your information, immigration officials identified both Michael and Zayek at the immigration counter by their passport.

[10] The hotel register of Star Gate Hotel [Exhibit #25], surveillance cameras installed in that hotel [Exhibit #1]

[11] Surveillance cameras installed in Star Gate Hotel and Shin-Osaka Station [Exhibit #1]

[12] Surveillance cameras installed in Ghosn's house [Exhibit #7]

10.      At 2:06 pm, Peter Taylor, who waited inside the parking of Grand Hyatt Tokyo, received two suitcases from Ghosn's home that were transported in the Alphard driven by Ghosn's driver. Ghosn was not in the Alphard. Peter Taylor carried those two suitcases to Room 933 of Grand Hyatt Tokyo[13].

11.      At approximately 2:30 pm, Ghosn left the house from the main entrance with a knit cap and a scarf but without baggage. He walked to Grand Hyatt Tokyo, operated the elevator at the hotel using the card key he had been given by Peter Taylor to the 9th floor, entered Room 933 at 2:53pm, and changed his clothes there[14].

At approximately 3:24pm, Michael Taylor and Zayek left Shinagawa Station in Tokyo for Grand Hyatt Tokyo by taxi, met Peter Taylor at the entrance of the hotel, entered Room 933 together, and Michael Taylor, Zayek, Peter Taylor and Ghosn came out of Room 933 with luggage including two suitcases which Peter Taylor received in the parking of Grand Hyatt Tokyo.

Michael Taylor, Zayek and Ghosn took a taxi to Shinagawa Station with one suitcase out of two suitcases which Peter Taylor received, passed the ticket gate in Shinagawa Station at 4:43pm, and left for Osaka[15].

Peter Taylor carried one suitcase which Ghosn, Michael Taylor and Zayek did not carry out of two suitcases which Peter Taylor received, and departed alone to China from Narita Airport[16].

12.      At approximately 7:24pm, Michael Taylor, Zayek and Ghosn left Shin-Osaka Station for Star Gate Hotel by taxi[17].

At 8:14pm, Michael Taylor, Zayek and Ghosn arrived at Star Gate Hotel. Zayek and Ghosn entered Room 4609, and Michael Taylor joined them later. Ghosn hid in one of the big black boxes. At 9:57pm, Michael Taylor and Zayek left that room carrying their baggage including two big black boxes, one of which contained Ghosn. There is no video surveillance camera image of Ghosn leaving Room 4609. Michael Taylor and Zayek departed from the hotel and arrived at Kansai International Airport at 10:20pm. The baggage which Michael Taylor and Zayek carried passed the security check area without being checked and was loaded into the aforementioned private jet[18].

The aforementioned private jet departed for the Republic of Turkey at 11:10pm with Michael Taylor, Zayek and their baggage including the box containing Ghosn. Ghosn and others transferred airplanes at the airport in Turkey and finally entered the Republic of Lebanon.

13.      On December 31, 2019, Ghosn made a public announcement that he was in Lebanon. On that day, based on TPPO's request, Tokyo District Court vacated all bails on the ground that he had violated the conditions referred to in the paragraph 4 above.

---

[13] Surveillance cameras installed in Grand Hyatt Tokyo [Exhibit #4]
[14] Surveillance cameras installed in Ghosn's house, on the street and in Grand Hyatt Tokyo [Exhibit #2, #4, #5, #7]
[15] Surveillance cameras installed in Grand Hyatt Tokyo, in Shinagawa Station, and inside the Shinkansen, and the drive recorder of the taxi [Exhibit #3]
[16] Surveillance cameras installed in Grand Hyatt Tokyo [Exhibit #4], Peter Taylor's immigration records [Exhibit #16]
[17] Surveillance cameras installed in Shin-Osaka Station and the drive recorder of the taxi [Exhibit #3]
[18] Surveillance cameras installed in Star Gate Hotel [Exhibit #3], statements of an employee of the private lounge in the Kansai International Airport and a security inspector [Exhibit #21, #23]

14.     Ghosn made wire transfers to a bank account under the name of PROMOTE FOX LLC, a company managed by Peter Taylor, as follows;[19]

- October 9, 2019     540,000 USD
- October 25, 2019    322,500 USD

15.     The Tokyo District Public Prosecutors Office obtained the information that Michael Taylor and Peter Taylor entered the U.S. on February 16, 2020, and March 22, 2020, respectively, both from Dubai, the United Arab of Emirates, and requested the U.S. competent authority to execute provisional arrest. TPPO was informed that both Michael Taylor and Peter Taylor were arrested by the U.S. authorities on May 20, 2020, after they discovered that Peter Taylor was about to board a flight to Beirut, Lebanon. Japan does not have extradition treaties with Lebanon, the United Arab of Emirates, or China. The TPPO hereby requests the U.S. competent authority to extradite both of them.

Part V. Identification of the Fugitives

        The Tokyo District Public Prosecutors Office has identified the fugitives based on the following evidential facts.

1.      Michael Taylor and Zayek

(i)     The immigration officer identified Michael Taylor and Zayek by their passports when they entered Japan. Their names are on the application documents as passengers of the private jet used in this case [Exhibit #10].

(ii)    The acts of Michael Taylor and Zayek after entering Japan are almost seamlessly traceable by surveillance cameras. Especially, they have been recorded in the surveillance cameras installed in Kansai International Airport, Star Gate Hotel, the bullet train, Shinagawa Station, Grand Hyatt Tokyo [Exhibit #1, #3, #4]. In addition, there are clear images of their faces recorded by the drive recorder and surveillance cameras installed in the taxi and the private lounge in Kansai International Airport respectively [Exhibit #1, #3], and the faces on the images resemble the pictures on their passports and pictures taken when they entered Japan [Exhibit #10, #12].

(iii)   The procedures of immigration recorded in the surveillance cameras are consistent with statements of the employees of the private lounge in Kansai International Airport and the airplane handling company, who served Michael Taylor and Zayek [Exhibit #1, #3, #20, #21].

(iv)    Michael Taylor and Zayek repeatedly entered and left Room 4009 and 4609 of Star Gate Hotel, and the names on the hotel register of those rooms are respectively "Taylor Michael" and "ZAYEK GEORGE ANTOINE" and their passport numbers are on the register [Exhibit #25].

2.      Peter Taylor

(i)     The name of a man on the hotel register who stayed at Room 933 of Grand Hyatt Tokyo on December 28-29, 2019 is "Peter Taylor" and Peter Taylor's passport is attached to the register [Exhibit #8, #9, #24].

---

[19] Relevant bank records [Exhibit #29]

(ii)     The acts of aforementioned man after check-in were almost seamlessly recorded by the surveillance cameras installed in the lobby, elevators, 9th floor's elevator hall, corridors and parking lot. The records of surveillance cameras include the scenes that (i) the aforementioned man is meeting with a man who appears to be Ghosn in the hotel on December 28, (ii) the aforementioned man is receiving two suitcases at the parking lot of Grand Hyatt Tokyo on December 29, (iii) the aforementioned man is entering Room 933 together with men who appear Michael Taylor and Zayek and going out of the Room 933 with men who appear Ghosn, Michael Taylor and Zayek [Exhibit #4]. The aforementioned man in each scene is deemed to be the same based on appearance and clothes, and his face resembles the picture on Peter Taylor's passport and the picture taken when he entered Japan [Exhibit #9, #13].

3.     Ghosn

(i)     The surveillance camera installed in Grand Hyatt Tokyo has recorded a scene that a man met with Peter Taylor at Grand Hyatt Tokyo after he arrived there and got out of Alphard, which Ghosn used, on December 28, 2019 [Exhibit #4]. The surveillance camera installed in Ghosn's house has recorded a scene that a man was coming into Ghosn's house around noon on December 29, 2019 [Exhibit #7].
        Concerning these situations, the driver of Ghosn gave a statement that he drove Ghosn to Grand Hyatt Tokyo afternoon on December 28, 2019 and that he drove Ghosn to his house from a restaurant around noon on December 29, 2019 [Exhibit #26]. Taking them into consideration, the man is identified as Ghosn.

(ii)     On December 29, 2019, the acts of a man such as going to Grand Hyatt Hotel from around Ghosn's house on foot, entering Room 933 of Grand Hyatt Hotel, leaving the room together with the men who appear to be Peter Taylor, Michael Taylor and Zayek, going to Osaka by the bullet train and entering Room 4609 of Star Gate Hotel, are almost seamlessly traceable by the surveillance cameras. Specifically, surveillance cameras installed on the street from around Ghosn's house to Grand Hyatt Tokyo, in Grand Hyatt Tokyo, in Shinagawa Station, inside the bullet train, in Shin Osaka Station and in Star Gate Hotel have recorded his acts [Exhibit #2, #3].
        Concerning these situations, there are clear images of the man's face without knit cap and mask recorded by the drive recorder of the taxi going to Star Gate Hotel from Shin Osaka Station [Exhibit #3 (picture #141)], which closely resemble Ghosn's face.


Part VI. Issuance of Warrant for the Fugitive's Arrest

        The following warrant for Michael Taylor's arrest, which is valid until now, was issued:

| | |
|---|---|
| Date of Issuance: | February 28, 2020[20] |
| Issuing Judge: | Yukiko Yomori, Tokyo District Court |
| Suspected Case: | Enabling the escape of criminals, and aiding and abetting the violation of the Immigration Control and Refugee Recognition Act |
| Expiration Date: | August 28, 2020 (the term of validity is scheduled to be renewed until Michael Taylor is arrested) |

---

[20] The arrest warrant was initially issued on January 30, 2020. However, the fugitive was not arrested by the expiration date, February 28, and the warrant was reissued on that date.

Part VII. Requested Matters

      We request that Michael Taylor be extradited to Japan, based upon the criminal facts mentioned above to be applicable for extradition.

      The cited criminal facts come under the Article 2, paragraph (1) of the Extradition Treaty between the United States and Japan and satisfy the requirement of the Article 3 of the said Treaty, with no hindrance for the execution of extradition.


Part VIII.  Attached Materials

1. Certified copy of the arrest warrant
2. The fugitive's face photo and fingerprints
3. Copies of the fugitive's passports
4. Documentary Evidence

| Arrest Warrant (Ordinary Arrest) | |
|---|---|
| Name of the suspect | Michael L. Taylor |
| Age, Address, Occupation of the suspect, Charge for which the arrest is permitted, summary of alleged facts of crime, place where suspect is to be brought, the official title and name of the requester: | As described in the attached Request for the Arrest Warrant |
| Term of validity: | Until August 28th, 2020 |
| After the term of validity, this warrant no longer enables initiation of an arrest. In the event of its expiration, it shall be returned to the competent court. Even during the term of validity, if an arrest becomes unnecessary, it must be immediately returned to the competent court. | |
| I hereby permit an arrest of the suspect based on the aforementioned alleged facts of crime.       February 28th, 2020           Tokyo District Court             Judge   Yukiko Yomori | |
| Seal of the official title and name of the arrester | |
| Time/date/year and place of the arrest | Arrested at　：　on　　　　　, 20‥ at |
| Time/date/year and place of custody | At　：　on　　　　　, 20‥ at |
| Name and seal | |
| Time/date/year of the procedure to send | At　：　on　　　　　, 20‥ at |
| Name and seal | |
| Time/date/year of the receipt of | At　：　on　　　　　, 20‥ at |
| Name and seal | |

Note: When executing the arrest, on the spot, search, seizure or inspection may be simultaneously carried out; however, attention is required so that honor of the suspect is respected and that disturbance to others is avoided as much as possible.

The suspect who has been arrested by this warrant is entitled to appoint defense attorney.

Request for an Arrest Warrant

February 28th, 2020

To: Judge, Tokyo District Court

Tokyo District Public Prosecutors Office

Public Prosecutor    Naoki Watanabe

I hereby request issuance of an Arrest Warrant against the person specified below on the alleged harboring of criminals and accessoryship of violation of the Immigration Control and Refugee Recognition Act (Article 71, 25 II ) case.

1. Suspect

      Name: MICHAEL L. TAYLOR

      Age: 59, born on October 21st, 1960

      Occupation: Unknown

      Address: Unknown

2. If the term of validity needs to be longer than 7 days, the necessary term and reason for it:

      As described in Annex 1

3. Government or public office or other place to which the suspect is taken:

      Tokyo District Public Prosecutors Office, its Branch Offices or Suboffices and   Local Public Prosecutors Offices in the jurisdiction of the abovementioned District Public Prosecutors Office;

      A District Public Prosecutors Office located within the jurisdiction of place of the arrest of the suspect, its Branch Offices or Suboffices and Local Public Prosecutors Offices in the jurisdiction of the abovementioned District Public Prosecutors Office; or

      Tokyo Detention Center.

4. If more than one warrant is necessary, the number and the reason:

      Not Applicable.

5. Probable reasons to suspect that the suspect has committed the crime:

      The entire volume of the case documents, including the investigation report by the prosecutor dated on January 29th, 2020.

6. Reasons for the necessity of the suspect's arrest:

      There are reasonable grounds to suspect that he is likely to tamper evidence by himself or in conspiracy with interested persons and that he may flee.

7. In the case a warrant had been previously requested or issued against the suspect, concerning the same fact or other fact currently under investigation, mention that, and describe the reasons for requesting another Arrest Warrant concerning the same fact:

      As described in Annex 2

8. With regard to the offense which shall be punished with a fine of not more than 300,000 JPY (or 20,000 JPY with regard to crimes other than those under the Penal Code, the Act on Punishment of

Physical Violence and Others, and the Act on Penal Provisions related to Economic Activities) and a misdemeanor detention or petty fine, describe reasons stipulated by the proviso of Paragraph 1 of Article 199 of the Code of Criminal Procedure:

Not Applicable

9. Summary of the alleged facts of a crime:

As described in Annex 3

EX-Taylor, M.-00040

Annex 1

If the term of validity needs to be longer than 7 days, the necessary term and reason for it:

1. Term
   For 6 month

2. Reason
   The suspect is currently not in Japan and the prosecutor at Tokyo District Public Prosecutors Office cannot make contact with the suspect. In addition, given that the suspect provided assistance and enabled Carlos Ghosn Bichara's escape and the suspect himself escaped from Japan, and that the fact of Ghosn's escape has been widely reported in foreign country, and therefore the suspect can easily notify the investigation against himself is on-going, it is unlikely that the suspect voluntarily enters Japan.
   We need to request other countries for cooperation to find the whereabouts of the suspect and to arrest the suspect. For that, we need a considerable long period of time in negotiating with other countries.

Annex 2

In the case a warrant had been previously requested or issued against the suspect, concerning the same fact or other fact currently under investigation, mention that, and describe the reasons for requesting another Arrest Warrant concerning the same fact:

Although an arrest warrant was issued on January 30th, 2020 by Judge Yukiko Yomori at Tokyo District Court in connection with the fact of the same crime, the suspect has not been arrested until today.

Annex 3

Alleged facts of a crime:

The suspect, in conspiracy with George Antoine Zayek and Peter Maxwell Taylor, knowing that Carlos Ghosn Bichara (hereinafter "Ghosn"), who held citizenships of French Republic, Republic of Lebanon, and Federative Republic Brazil, was a defendant under criminal proceedings pending at Tokyo District Court for the offences of Violation of Financial Instruments and Exchange Act and Violation of Company Act, and bailed under the conditions including neither hide nor escape and no overseas trip, for the purpose of enabling him to get off with the punishment, at the time of Ghosn's departure from Japan to Republic of Lebanon via Republic of Turkey, from 1:53pm to 11:10pm on December 29th, 2019, provided assistance and enabled Ghosn's escape by; carrying Ghosn's luggage from Ghosn's house at Azabunagasakacho 1-10, Minato-ward, Tokyo prefecture, to Grand Hyatt Tokyo at Roppongi 6-10-3, Minato-ward; in the hotel, handing the luggage to Ghosn and providing a place for him to change Ghosn's cloths; escorting Ghosn from the hotel to Star Gate Hotel Kansai Airport at Rinkuoraikita 1, Izumisano-city, Osaka prefecture; in the hotel, hiding Ghosn inside their carrying luggage; travelling from the hotel to the premium gate called "Tamayura" at the Kansai International Airport located at Tajiri-cho, Sennan-gun, Osaka prefecture, or so; having the employees of the airport, who had no knowledge of their plan, clear the embarkation procedure with hiding Ghosn inside their carrying luggage and put the luggage on board of the jet of Flight TCTSR operated by MNG Jet; and departing the airport with Ghosn by Flight TCTSR and then leaving Japan's territory, thus the suspect committed harboring of criminals by assisting Ghosn's escape and aided by easing Ghosn's illegal leaving from Japan without receiving confirmation by immigration officer.

The above is a certified copy.
June 25, 2020
Minako Inokura, Public Prosecutor's Assistant Officer
Tokyo District Public Prosecutors Office

Applicant's Identity Information

1. Particulars of identity

Nationality     United States of America
Name            TALOR MICHAEL L
Sex             Male
Date of Birth   ███████ 1960
Date of Application for Landing     December 29, 2019
Place of Application for Landing    Kansai International Airport

2. Image of fingerprints

2　指紋画像



左示指



右示指

Left index finger          Right index finger

3. Image of Face



The above is a certified extract.
June 25, 2020
Minako Inokura, Public Prosecutor's Assistant Officer
Tokyo District Public Prosecutors Office

EX-Taylor, M.-00047

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

PASSPORT
PASSEPORT
PASAPORTE

USA

## UNITED STATES OF AMERICA

Type / Type / Tipo     Code / Code / Código     Passport No / No. du Passeport / No. de Pasaporte

P          USA

Surname / Nom / Apellidos

**TAYLOR**

Given Names / Prénoms / Nombres

**MICHAEL L**

Nationality / Nationalité / Nacionalidad

**UNITED STATES OF AMERICA**

Date of birth / Date de naissance / Fecha de nacimiento

1960

Place of birth / Lieu de naissance / Lugar de nacimiento

**NEW YORK, U.S.A.**

Date of issue / Date de délivrance / Fecha de expedición

**05 Feb 2016**

Date of expiration / Date d'expiration / Fecha de caducidad

**04 Feb 2026**

Endorsements / Mentions Spéciales / Anotaciones

**SEE PAGE 51**

Sex / Sexe / Sexo

**M**

Authority / Autorité / Autoridad

**United States
Department of State**

USA

TAYLOR<<MICHAEL<L<<<<<<<<<<<<<<<<<<<<<<<<<<

The above is a certified extract.
June 25, 2020
Minako Inokura, Public Prosecutor's Assistant Officer
Tokyo District Public Prosecutors Office

EX-Taylor, M.-00048

List of Exhibits

| No. | Title |
|-----|-------|
| 1 | Report on Image Analysis Results (January 19, 2020) |
| 2 | Report on Image Analysis Results (January 18, 2020) |
| 3 | Report on Image Analysis Results (January 19, 2020) |
| 4 | Report on Image Analysis Results (January 18, 2020) |
| 5 | Report on Image Analysis Results (January 18, 2020) |
| 6 | Report on Image Analysis Results (January 20, 2020) |
| 7 | Investigation Report (January 15, 2020) |
| 8 | Copy Report (January 17, 2020) |
| 9 | Enquiry for Information Related to Investigation (January 4, 2020)<br>*written reply is attached |
| 10 | Report on Collection of Documents (January 23, 2020) |
| 11 | Investigation Report (June 3, 2020) |
| 12 | Enquiry for Information Related to Investigation (January 4, 2020)<br>*written reply (made on January 4, 2020) is attached |
| 13 | Enquiry for Information Related to Investigation (January 7, 2020)<br>*written reply (made on January 7, 2020) is attached |
| 14 | Enquiry for Immigration Records (January 17, 2020)<br>*written reply (made on January 20, 2020) is attached |
| 15 | Enquiry for Immigration Records (January 17, 2020)<br>*written reply (made on January 20, 2020) is attached |
| 16 | Enquiry for Immigration Records (January 17, 2020)<br>*written reply (made on January 20, 2020) is attached |
| 17 | Enquiry for Immigration Records (January 6, 2020)<br>*written reply (made on January 7, 2020) is attached |
| 18 | Interview Results Report (January 18, 2020) |
| 19 | Record of Oral Statement to Detective by Tomoyuki Matsui (January 29, 2020) |
| 20 | Record of Oral Statement to Detective by Tomoyuki Matsui (January 29, 2020) |
| 21 | Record of Oral Statement to Detective by Kayoko Tokunaga (January 19, 2020) |
| 22 | Record of Oral Statement to Detective by Shigekuni Kawada (January 20, 2020) |
| 23 | Record of Oral Statement to Detective by Akira Baba (January 18, 2020) |
| 24 | Record of Oral Statement to Detective by Waegenaer Herlinde (January 19, 2020) |
| 25 | Report on Collection of Documents (January 21, 2020) |
| 26 | Record of Oral Statement to Prosecutor by Ticzon Danilo Ejanda (January 27, 2020) |
| 27 | U.S. Entry and Exit Records of Michael Taylor (March 31, 2020) |
| 28 | U.S. Entry and Exit Records of Peter Taylor (March 31, 2020) |
| 29 | Investigation Report (June 5, 2020) |
| 30 | Declaration of Naoki Watanabe |

Exhibit 1

Form of Attachments to Record of Statements

Report on Image Analysis Results
(Movements of two investigation subjects on 29th December from entry into Japan to arrival at Grand Hyatt Tokyo)

19th January 2020

To: Mr. Yukiharu Watarai, Judicial Police Officer and Senior Superintendent
Director of First Criminal Investigation Division of the Tokyo Metropolitan Police Department

Yoshiyuki Suzuki, Judicial Police Officer and Assistant Police Inspector
First Criminal Investigation Division of the Tokyo Metropolitan Police Department

Regarding the case of suspected violations of the Immigration Control and Refugee Recognition Act by suspect Carlos Ghosn Bichara, we have confirmed, by analyzing image data collected from security cameras, and report below, the movements of the investigation subjects, George Antoine Zayek and Michael L Taylor, from their entry into Japan to joining another investigation subject, Peter Maxwell Taylor at Grand Hyatt Tokyo.

1. Date of analysis
   Period from 2nd January 2020 to 19th January 2020
2. Persons who performed analysis
(1) This reporter
(2) The following members of the First Criminal Investigation Division of the Tokyo Metropolitan Police Department:
   Muneharu Keida, Judicial Police Officer and Assistant Police Inspector
   Hironori Takimoto, Judicial Police Officer and Police Sergeant
   Ryuji Umezawa, Judicial Police Officer and Police Sergeant
   Kei Watanabe, Judicial Police Officer and Police Sergeant
   Isao Komatsu, Judicial Police Officer and Police Sergeant
   Kazuhiro Minagawa, Judicial Police Officer and Police Sergeant
   Yusuke Kataigi, Judicial Police Officer and Police Sergeant
   Hiroshi Takei, Judicial Police Officer and Police Sergeant
3. Equipment used for analysis
   Nine analytical terminals (laptop personal computers)
4. Data analyzed
(1) Images from a security camera installed at Kansai International Airport, 1 Senshu-kuko Kita, Izumisano-shi, Osaka

(Images Nos. 1 – 8 and 17 – 24)

(2) Images from a security camera installed at the security check room of the Premium Gate Tamayura, Terminal 2 Building of Kansai International Airport, 13 Senshu-kuko Naka, Tajiricho, Sennan-gun, Osaka

(Images Nos. 9 – 16 and 25 – 29)

(3) Images from a security camera installed near the entrance of the Premium Gate Tamayura, Terminal 2 Building of Kansai International Airport, 13 Senshu-kuko Naka, Tajiricho, Sennan-gun, Osaka

(Images Nos. 30 – 34)

(4) Images from security cameras installed at Star Gate Hotel Kansai Airport, 1 Rinku Orai Kita, Izumisano-shi, Osaka

(Images Nos. 35 – 133)

Tokyo Metropolitan Police Department

Form of Attachments to Record of Statements

(5) Images from security cameras installed at JR Tokai Shin Osaka Station, 5-16-1 Nishi-nakajima, Yodogawa-ku, Osaka-shi, Osaka

(Images Nos. 134 − 157)

(6) Images from security cameras installed in JR Tokai Nozomi No. 162

(Images Nos. 158 − 174)

(7) Images from security cameras installed at JR Tokai Shinagawa Station, 2-1-78 Konan, Minato-ku, Tokyo

(Images Nos. 175 − 194)

(8) Images from security cameras installed near a corridor (Jiyu Tsuro) at JR Shinagawa East Building, 2-18-1 Konan, Minato-ku, Tokyo

(Images Nos. 195 − 206)

(9) Images from security cameras installed at 3-26-27 Takanawa, Minato-ku, Tokyo

(Images Nos. 207 − 218)

(10) Images from security cameras installed near the taxi stand at JR Shinagawa East Building, 2-18-1 Konan, Minato-ku, Tokyo

(Images Nos. 219 − 239)

(11) Images from security cameras installed at Grand Hyatt Tokyo, 6-10-3 Roppongi, Minato-ku, Tokyo

(Images Nos. 240 − 266)

5. Analytical results
   As shown in the sketches and documents attached hereto.

6. Symbols (codes) assigned to the investigation subjects
   For the purpose of the sketches and documents attached hereto:

(1) George Antoine Zayek (hereinafter referred to as "George") is assigned and indicated as code A;

(2) Michael L Taylor (hereinafter referred to as "Michael") is assigned and indicated as code B; and

(3) Peter Maxwell Taylor (hereinafter referred to as "Peter") is assigned and indicated as code C.

These codes have been inserted, as appropriate, on the images contained in the documents to show the movements of the investigation subjects, etc.

(4) In unsharp images analyzed, the investigation subjects were identified based on what was found out in other security camera images.

7. Measures
   To clarify the analytical results, attached to the end of this report are: (1) five sketches; and (2) a 67-page document in Excel file format containing 266 images, which are still images extracted from relevant videos, trimmed, enlarged and/or otherwise adjusted, and accompanied by legends.

End

Tokyo Metropolitan Police Department

Exhibit 2

EX-Taylor, M.-00126

Form of Attachments to Record of Statements

Report on Image Analysis Results
(Movements of Ghosn on 29th December from his home to Grand Hyatt Tokyo)

18th January 2020

To: Mr. Yukiharu Watarai, Judicial Police Officer and Senior Superintendent
Director of First Criminal Investigation Division of the Tokyo Metropolitan
Police Department

Ryuji Umezawa, Judicial Police Officer and Police Sergeant
First Criminal Investigation Division of the Tokyo Metropolitan Police Department

Regarding the case of suspected violations of the Immigration Control and Refugee Recognition Act by suspect Carlos Ghosn Bichara, we have confirmed, by analyzing image data collected from security cameras, and report below, the movements of the suspect.

1.  Date of analysis
    Period from 2nd January 2020 to 18th January 2020
2   Persons who performed analysis
(1) This reporter
(2) Yoshiyuki Suzuki, Judicial Police Officer and Assistant Police Inspector, First Criminal Investigation Division of the Tokyo Metropolitan Police Department
(3) Daisuke Hara, Judicial Police Officer and Assistant Police Inspector, First Criminal Investigation Division of the Tokyo Metropolitan Police Department
(4) Hiroshi Takei, Judicial Police Officer and Police Sergeant, First Criminal Investigation Division of the Tokyo Metropolitan Police Department
(5) Kazuhiro Minagawa, Judicial Police Officer and Police Sergeant, First Criminal Investigation Division of the Tokyo Metropolitan Police Department
(6) Kei Watanabe, Judicial Police Officer and Police Sergeant, First Criminal Investigation Division of the Tokyo Metropolitan Police Department
(7) Isao Komatsu, Judicial Police Officer and Police Sergeant, First Criminal Investigation Division of the Tokyo Metropolitan Police Department
3.  Equipment used for analysis
    Seven analytical terminals (laptop personal computers)
4.  Data analyzed
(1) Images from a security camera installed at Nagasaka Building, 1-3 Azabu-Nagasakacho, Minato-ku, Tokyo

(see images Nos. 1 − 2)

(2) Images from security cameras installed at Azabu Nagasaka House, 1-54 Azabu-Nagasakacho, Minato-ku, Tokyo

(see images Nos. 3 − 19)

(3) Images from a security camera installed at Kabushiki Kaisha Nagasaka Sarashina, 13 Azabu-Nagasakacho, Minato-ku, Tokyo

(see images Nos. 20 − 23)

(4) Images from security cameras installed at Tokyo Metropolitan Police Department Toriizaka Residence, 1-1-6 Azabu Juban, Minato-ku, Tokyo

(see images Nos. 24 − 31)

(5) Images from a security camera installed at Minato City Azabu Library, 5-12-24 Roppongi, Minato-ku, Tokyo

(see images Nos. 32 − 34)

(6) Images from camera No. 2 of Nagasaka-kai, installed near 1-4-2 Azabu Juban, Minato-ku, Tokyo

(see images Nos. 35 − 38)

Tokyo Metropolitan Police Department

EX-Taylor, M.-00127

Form of Attachments to Record of Statements

(7) Images from camera No. 5 of Azabu Juban Shotengai Promotion Association, installed near 1-7-3 Azabu Juban, Minato-ku, Tokyo

(see images Nos. 39 – 41)

(8) Images from camera No. 1 of Nagasaka-kai, installed near 1-4-6 Azabu Juban, Minato-ku, Tokyo

(see images Nos. 42 – 46)

(9) Images from security cameras installed at Minato City Azabu Juban Public Parking Station, 1-4-10 Azabu Juban, Minato-ku, Tokyo

(see images Nos. 47 – 54)

(10) Images from security cameras installed at Roppongi Hills Gate Tower, 6-11-1 Roppongi, Minato-ku, Tokyo

(see images Nos. 55 – 61)

(11) Images from security cameras installed at Roppongi Hills Mori Tower, 6-10-1 Roppongi, Minato-ku, Tokyo

(see images Nos. 62 – 89)

(12) Images from security cameras installed at Grand Hyatt Tokyo, 6-10-3 Roppongi, Minato-ku, Tokyo

(see images Nos. 90 – 106)

5.   Analytical results
As shown in the sketches and documents attached hereto.

6.   Symbols (codes) assigned to the suspect

(1) For the purpose of the sketches and documents attached hereto, suspect Carlos Ghosn Bichara (hereinafter referred to as "Ghosn") is assigned and indicated as code G. This code has been inserted, as appropriate, on in the images contained in the documents to show the movements of the suspect.

(2) In unsharp images analyzed, the suspect was identified based on what was found out in other security camera images.

7.   Measures
To clarify the analytical results, attached to the end of this report are: (1) two sketches; and (2) a 27-page document in Excel file format containing 106 images, which are still images extracted from relevant videos, trimmed, enlarged and/or otherwise adjusted, and accompanied by legends.

End

Exhibit      3

Form of Attachments to Record of Statements

Report on Image Analysis Results
(Movements of the suspect and two others on 29th December from Grand Hyatt Tokyo to departure from Japan)

19th January 2020

To: Mr. Yukiharu Watarai, Judicial Police Officer and Senior Superintendent
Director of First Criminal Investigation Division of the Tokyo Metropolitan
Police Department

Yoshiyuki Suzuki, Judicial Police Officer and Assistant Police Inspector
First Criminal Investigation Division of the Tokyo Metropolitan Police
Department

Regarding the case of suspected violations of the Immigration Control and Refugee Recognition Act by suspect Carlos Ghosn Bichara, we have confirmed, by analyzing image data collected from security cameras, and report below, the movements of the suspect and the investigation subjects, George Antoine Zayek and Michael L Taylor, from Grand Hyatt Tokyo to their departure from Japan.

1.  Date of analysis
    Period from 2nd January 2020 to 19th January 2020
2.  Persons who performed analysis
(1) This reporter
(2) The following members of the First Criminal Investigation Division of the Tokyo Metropolitan Police Department:
    Muneharu Keida, Judicial Police Officer and Assistant Police Inspector
    Daisuke Hara, Judicial Police Officer and Assistant Police Inspector
    Hironori Takimoto, Judicial Police Officer and Police Sergeant
    Ryuji Umezawa, Judicial Police Officer and Police Sergeant
    Kei Watanabe, Judicial Police Officer and Police Sergeant
    Isao Komatsu, Judicial Police Officer and Police Sergeant
    Hiroshi Takei, Judicial Police Officer and Police Sergeant
    Yusuke Kataigi, Judicial Police Officer and Police Sergeant
3.  Equipment used for analysis
    Nine analytical terminals (laptop personal computers)
4.  Data analyzed
(1) Images from security cameras installed at Grand Hyatt Tokyo, 6-10-3 Roppongi, Minato-ku, Tokyo

(Images Nos. 1 − 35)

(2) Images from security cameras installed at Roppongi Hills Mori Tower, 6-10-1 Roppongi, Minato-ku, Tokyo

(Images Nos. 36 − 51 and 54 − 56)

(3) Images from the drive recorder installed in a taxi (Nerima 530U6876) of Kokusai kotsu Co., Ltd.

(Images Nos. 52, 53, 57, 58 and 60 − 63)

(4) An image from a security camera installed at Shinagawa Station Takanawa Exit Police Box of Takanawa Police Station, Tokyo Metropolitan Police Department, 3-26-30 Takanawa, Minato-ku, Tokyo

(Image No. 59)

Tokyo Metropolitan Police Department

Form of Attachments to Record of Statements

(5)  Images from security cameras installed at JR East Shinagawa Station, 3-26-27 Takanawa, Minato-ku, Tokyo

(Images Nos. 64 – 88)

(6)  Images from security cameras installed at JR Tokai Shinagawa Station, 2-1-78 Konan, Minato-ku, Tokyo

(Images Nos. 89 – 110)

(7)  Images from security cameras installed in JR Tokai Nozomi No. 391

(Images Nos. 111 – 124)

(8)  Images from security cameras installed at JR Tokai Shin Osaka Station, 5-16-1 Nishi-nakajima, Yodogawa-ku, Osaka-shi, Osaka

(Images Nos. 125 – 135)

(9)  Images from the drive recorder installed in a taxi (Naniwa 500I5636) of Tsurumi Office of Kabushiki Kaisha Miraito

(Images Nos. 136 – 145)

(10) Images from a security camera installed at the SiS Rinku Tower, 1 Rinku Orai Kita, Izumisano-shi, Osaka

(Images Nos. 146 – 149)

(11) Images from security cameras installed at Star Gate Hotel Kansai Airport, 1 Rinku Orai Kita, Izumisano-shi, Osaka

(Images Nos. 150 – 200 and 213 – 300)

(12) Images from a security camera installed near the entrance of the Premium Gate Tamayura, Terminal 2 Building of Kansai International Airport, 13 Senshu-kuko Naka, Tajiricho, Sennan-gun, Osaka

(Images Nos. 201 – 212 and 301 – 315)

(13) Images from a security camera installed at the security check room of the Premium Gate Tamayura, Terminal 2 Building of Kansai International Airport, 13 Senshu-kuko Naka, Tajiricho, Sennan-gun, Osaka

(Images Nos. 316 – 333)

(14) Images from security cameras installed at Kansai International Airport, 1 Senshu-kuko Kita, Izumisano-shi, Osaka

(Images Nos. 334 – 359)

5.  Analytical results
    As shown in the sketches and documents attached hereto.

6.  Symbols (codes) assigned to the suspect and the investigation subjects
    For the purpose of the sketches and documents attached hereto:

(1)  suspect Carlos Ghosn Bichara (hereinafter referred to as "Ghosn") is assigned and indicated as code G;

(2)  George Antoine Zayek (hereinafter referred to as "George") is assigned and indicated as code A;

(3)  Michael L Taylor (hereinafter referred to as "Michael") is assigned and indicated as code B; and

(4)  Peter Maxwell Taylor (hereinafter referred to as "Peter") is assigned and indicated as code C.

    These codes have been inserted, as appropriate, on the images contained in the documents to show the movements of the suspect and others.

(5)  In unsharp images analyzed, the suspect and the investigation subjects were identified based on what was found out in other security camera images.

7.  Measures
    To clarify the analytical results, attached to the end of this report are: (1) five sketches; and (2) a 90-page document in Excel file format containing 359 images, which are still images

Form of Attachments to Record of Statements

extracted from relevant videos, trimmed, enlarged and/or otherwise adjusted, and accompanied by legends.

End