# Exhibit S

11/6/2020    docstore.ohchr.org/SelfServices/FilesHandler.ashx?enc=6QkG1d/PPRiCAqhKb7yhsrScoeR4Xk3TEyU8woKJCmc67izgYEczlnnF4wA/4b...

 United Nations

CAT/C/JPN/CO/2

# Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment

Distr.: General

28 June 2013

Original: English

**Committee against Torture**

## Concluding observations on the second periodic report of Japan, adopted by the Committee at its fiftieth session (6-31 May 2013)

1.The Committee against Torture considered the second periodic report of Japan (CAT/C/JPN/2) at its 1152nd and 1155th meetings, held on 21 and 22 May 2013 (CAT/C/SR.1152 and 1155), and adopted the following concluding observations at its 1164th meeting, held on 29 May 2013 (CAT/C/SR.1164).

### A.Introduction

2.The Committee expresses its appreciation to the State party for accepting the optional reporting procedure and for having submitted its periodic report under it, as it improves the cooperation between the State party and the Committee and focuses on the examination of the report as well as the dialogue with the delegation.

3.The Committee welcomes the constructive dialogue held with the State party's high-level delegation as well as the additional information and explanations provided by the delegation.

### B.Positive aspects

4.The Committee welcomes the State party's ratification of the following international instruments:

(a)The International Convention for the Protection of All Persons from Enforced Disappearance, on 23 July 2009;

(b)The Rome Statute of the International Criminal Court, on 1 October 2007.

5.The Committee welcomes the following legislative measures taken by the State party:

(a)The revision of the Immigration Control and Refugee Recognition Act, which came into effect in July 2009;

(b)The revision of the Act onthe Prevention of Spousal Violence and Protection of Victims, which came into effect in January 2008.

6.The Committee welcomes the following administrative and other measures taken by the State party:

(a)The establishment of the Inspection Guidance Division at the Supreme Public Prosecutors Office, in July 2011;

(b)The approval of the Third Basic Plan for Gender Equality, in December 2010;

(c)The creation of the Immigration Detention Facilities Visiting Committee, in July 2010;

(d)The adoption of the 2009 Action Plan to Combat Trafficking in Persons, in December 2009;

(e)The compilation of the Policy on Ensuring Propriety of Examination in Police Investigations, in January 2008.

### C.Principal subjects of concern and recommendations

### Definition of torture

7.*The Committee is concerned that the State party has not taken any measures to adopt a definition of torture that covers all the elements contained in article 1 of the Convention (art. 1) .*

**The Committee reiterates the recommendation made in its previous concluding observations (CAT/C/JPN/CO/1, para. 10) that the State party incorporate into domestic law the definition of torture as contained in article 1 of the Convention, encompassing all its constituent elements which characterize torture as a specific crime with appropriate penalties. The Committee considers, referring to its general comment No. 2 (2007) on implementation of article 2 by States p arties , that S tates parties will directly advance the Convention's overarching aim of preventing torture b y naming and defining the offence of torture in accordance with the C onvention and distinct from other crimes.**

docstore.ohchr.org/SelfServices/FilesHandler.ashx?enc=6QkG1d/PPRiCAqhKb7yhsrScoeR4Xk3TEyU8woKJCmc67izgYEczlnnF4wA/4bM72piRpB6el...    1/8

## Statute of limitations

*8. While noting the Act No.26 of April 2010 abolishing or extending the statute of limitations for certain crimes, the Committee is concerned that the statute of limitations remains in place for acts of torture and ill-treatment, including attempts to commit torture and acts by any person which constitute complicity or participation in torture (arts. 4 and 12).*

The Committee reiterates its previous recommendation (para.12) that the State party bring its legislation on the statute of limitations fully in line with its obligations under the Convention, so that perpetrators of acts of torture are prosecuted and convicted in accordance with the gravity of the acts, as required by article 4 of the Convention, without time limitations.

## Non-refoulement and d etention pending deportation

9. The Committee expresses its concern about:

(a) The use of lengthy, and in some cases, indefinite detention for asylum seekers under a deportation order according to the Immigration Control and Refugee Recognition Act (ICRRA) as well as the lack of independent review of such detention decision;

(b) The restrictive use of alternatives to detention for asylum seekers;

(c) The lack of resources and authority of the Immigration Detention Facilities Visiting Committee to effectively discharge its mandate, as well as the appointment of its members by the Ministry of Justice and the Immigration Bureau;

(d) Detention of unaccompanied children in Child Consultation Centres, which are often overcrowded and lack resources for hiring interpreters;

(e) The lack of effective implementation of article 53(3) of the ICRRA, which prohibits the removal of a person to any country where he or she may be subject to torture, as proscribed in article 3 of the Convention (arts. 3, 11 and 16).

**In light of the previous recommendations made by the Committee (para. 14) as well as by the Special Rapporteur on the human rights of m igrants, following his mission to Japan in 2011 ( A/HRC/17/33/Add.3 , para. 82), t he State party should :**

**(a) Continue its efforts to bring all legislation and practices relating to the detention and deportation of immigrants or asylum seek er s in line with the absolute principle of non-refoulement under article 3 of the Convention;**

**(b) Ensure that the detention of asylum seekers is only used as a last resort, and when necessary, for as short a period as possible, and introduce a maximum period of detention pending deportation ;**

**(c) Further utilize alternatives to detention as provided for in the Immigration Control and Refugee Recognition Act;**

**(d) S trengthen the independence , authority and effectiveness of the Immigration Detention Facilities Visiting Committee , inter alia, by providing appropriate resources and authorit y to ensure effective monitor ing detention centres and allowing them to receive and review complaints from immigrants or asylum seek er s in detention ;**

**(e) Consider acceding to the 1954 Convention relating to the Status of Stateless Persons and the 1961 Convention on the Reduction of Stateless.**

## Daiyo Kangoku (substitute detention system)

*10. While noting the formal separation of the police functions of investigation and detention under the Act on Penal Detention Facilities and Treatment of Inmates and Detainees, the Committee expresses its serious concern at the lack of safeguards in the Daiyo Kangoku system , which mitigate s the State party ' s compliance with the obligations under the Convention. In particular, the Committee deeply regrets that under this system, suspects can be detained in police cells for a period up to 23 days, with limited access to a lawyer especially during the first 72 hours of arrest and without the possibility of bail . The lack of effective judicial control over pretrial detention in police cells and the lack of an independent and effective inspection and complaints mechanis m are also a matter of serious concern. Furthermore, t*he Committee regrets the position of the State party that *the abolition or reform of the pretrial detention system is unnecessary (*A/HRC/22/14/Add.1, para. 147.116*) (arts. 2 and 16) .*

**The Committee reiterates its previous recommendations (para. 15) that t he State party :**

**(a) Take legislative and other measures to ensure , in practice, separation between the functions of investigation and detention;**

**(b) Limit the maximum time detainees can be held in police custody;**

**(c) Guarantee all fundamental legal safeguards *for a ll suspects in pretrial detention, including the right of confidential access to a lawyer throughout the interrogation process, and to legal aid from the moment of arrest, and to all police records related to their case, as well as the right to receive* independent medical assistance, and to contact relatives;**

*(d) C onsider abolishing the Daiyo Kangoku system in order to bring the State party's legislation and practices fully into line with international standards*

## Interrogation and confessions

11.The Committee takes note of article 38(2) of the Constitution and article 319 (1) of the Code of Criminal Procedurestipulating inadmissibility in court of confessions obtained under torture and ill-treatment as well as the State party's statement that convictions are not based solely on confessions and that interrogation guidelines ensure that suspects cannot be compelled to confess to a crime. However, the Committee remains seriously concerned that:

(a)The State party's justice system relies heavily on confessions in practice, which are often obtained while in the DaiyoKangoku without a lawyer present. The Committee has received reports about ill-treatment while interrogated, such as beating,intimidation, sleep deprivation, and long periods of interrogations without breaks;

(b)It is not mandatory to have defence counselpresent during all interrogations;

(c)The lack of means for verifying the proper conduct ofinterrogations of detainees, while in police custody, in particular the absence of strict time limitsfor the duration of consecutive interrogations;

(d)None of the 141 complaints concerning interrogationsfiled to the public prosecutors by suspects and their defence counselsresulted in a lawsuit. (arts. 2 and 15).

**The Committee reiterates its previous recommendations (para. 16) that t he State party take all necessary steps to in practice ensure inadmissibility in court of confessions obtained under torture and ill-treatment in all cases in line with a rticle 38(2) of the Constitution, a rticle 319(1) of the Code of Criminal Procedure as well as article 15 of the C onvention by, inter alia :**

**(a) Establishing rules concerning the length of interrogations, with appropriate sanctions for non-compliance ;**

**(b) I mprov ing criminal investigation methods to end practices whereby confession is relied on as the primary and central element of proof in criminal prosecution ;**

**(c)** *I mplementing safeguards such as electronic recordings of the entire interrogation process* **and ensuring that recordings are made available for use in trials ;**

**(d) Informing the Committee of the number of confessions made under compulsion, torture or threat, or after prolonged arrest or detention, that were not admitted into evidence based on article 319(1) of the Code of Criminal Procedure .**

## Complaint mechanism

12.Notwithstanding the information on the appeal systems established under the Act on Penal Detention Facilities and Treatment of Inmates and Detainees (2007), the Committee remains concerned about the lack of an independent and effective complaint mechanism for receiving and conducting impartial investigations into allegations of torture and ill treatment of persons deprived of their liberty, including those in police custody, and for ensuring that officials found guilty are appropriately punished. The Committee also regrets the absence of information on claims for State compensation or on disciplinary sanctions (arts. 2, 4, 12, 13 and 16).

**The Committee reiterates its previous recommendation (para. 21) that the State party:**

**(a) C onsider establishing a specifically dedicated, independent and effective complaints body and ensure prompt, impartial and full investigations into all allegations of torture and ill-treatment committed by public officials, and to prosecute and punish those responsible with penalties taking into account the grave nature of offences;**

**(b) E nsure in practice that complainants are protected against any reprisals as a consequence of their complaint or any evidence given;**

**(c) C ompile information, including disaggregated statistics, on the number of complaints filed against public officials on torture and ill-treatment, as well as information about the results of the proceedings, at both the penal and disciplinary levels.**

## Conditions of detention

13.Despite the State party's efforts to improve the conditions of detention and to increase the capacities of penal institutions,the Committee remains concerned at:

(a)Overcrowding in certain facilities, including women's prisons;

(b)Inadequate access to health care and serious shortage of medical staff within detention facilities;

(c)The insufficient provision of mental health care in prisons and reports indicating that mentally ill inmates are subjected to extensive use of solitary confinement and subsequent increased risks of suicide attempts;

(d)The lack of adequate safeguards and monitoring mechanism on the use of restraining devices such as Type II handcuffs and straitjackets (arts. 11 and 16).

**T he State party should strengthen its efforts to improve conditions of detention in prisons in conformity with the standard minimum rules for treatment of prisoners, by:**

**(a) R educing the high rate of overcrowding , in particular through the wider application of non-custodial m**easures as an alternative to imprisonment, in light of the United Nations Standard Minimum Rules for Non- custodial Measures (Tokyo Rules) and United Nations Rules for the Treatment of Women Prisoners and Non-Custodial Measures for Women Offenders (Bangkok Rules);

**(b) P roviding adequate somatic and mental health care for all persons deprived of their liberty;**

**(c) Strictly monitor ing the use of Type II handcuffs and the length of time they are used, so as to comply with the State party's obligations under the Convention, and consider ing completely banning the use of devices to restrain persons in custody .**

## Solitary confinement

14.The Committee remains deeply concerned that solitary confinement continues to be used often extensively prolonged without a time limit, and that decision of isolation for detainees is left to the discretion of the prison warden. The Committee regrets that the prison doctor is directly involved in the periodic medical review of prisoners in solitary confinement under the Act on Penal Detention Facilities and Treatment of Inmates and Detainees and such practice might deteriorate doctor-patient relationship, which is a major factor in safeguarding the health conditions of prisoners (arts. 2, 11 and 16).

**T aking into account the provisions of the Convention and the United Nations Standard Minimum Rules for the Treatment of Prisoners, the Committee urges the State party to:**

**(a) Revise its legislation in order to ensure that solitary confinement remains as a measure of last resort, for as short a time as possible under strict supervision and with a possibility of judicial review . The State party should establish clear and specific criteria for the decision of isolation ;**

**(b) Establish a system of regular monitoring and review of the detainee's physical and mental condition by qualified medical personnel throughout the period of solitary confinement , and release such medical records to the detainees and their legal counsel;**

**(c) I ncrease the level of psychological meaningful social contact for detainees while in solitary confinement;**

**(d) Evaluate and assess the existing practice of the use of solitary confinement, and also provide specific and disaggregated information on the use and conditions of solitary confinement.**

## Death penalty

15.The Committee is deeply concerned about the conditions of detention of prisoners on death row in the State party, in particular with respect to:

(a)The unnecessary secrecy and uncertainty surrounding the execution of prisoners sentenced to death. As referred to bythe Special Rapporteur on extrajudicial, summary or arbitraryexecutions, refusing to provide convicted persons and family members advance notice of the date and time of execution is a clear human rights violation(E/CN.4/2006/53/Add.3, para. 32);

(b)The use of solitary confinement for persons sentenced to death, often for extended periods of time, even exceeding 30 yearsin some cases, and limited contact with the outside;

(c)Interference with the right to assistance by legal counsel, including the limited confidential access to lawyer;

(d)The lack of a mandatory appeal system for capital cases given that an increasing number of defendants convicted and sentenced to death without exercising their right of appeal;

(e)The non-use of the power of pardon since 2007 and the absence of transparency concerning procedures for seeking benefit for pardon, commutation or reprieve;

(f)Reports about executions carried out even if the person was determined by a court to be mentally ill, as in the case of Seiha Fujima, in contradiction of article 479(1) of the Code of Criminal Procedures which prohibits the execution of a detainee in a state of insanity (arts. 2, 11 and 16).

**In light of the previous recommendations made by the Committee (para. 17), the Human Rights Committee (CCPR/C/GC/32, para. 38) as well as the communication sent by the Special Rapporteur on extrajudicial, summary**

11/6/2020     docstore.ohchr.org/SelfServices/FilesHandler.ashx?enc=6QkG1d/PPRiCAqhKb7yhsrScoeR4Xk3TEyU8woKJCmc67izgYEczInnF4wA/4b...

Case 4:20-cv-11272-LTS Document 59-14 Filed 11/06/20 Page 6 of 9

or arbitrary executions ( *A/HRC/14/24/Add.1, paras.515 ff* ), the Committee urges the State party to ensure th at death row inmates are afforded all the legal safeguards and protection s provided by the Convention , inter alia, by *:*

**(a)** *Giving death row inmates and their family reasonable advance notice of the scheduled* date and time of the execution;

**(b) Revising the rule of solitary confinement for death row inmates ;**

**(c) Guaranteeing effective assistance by legal counsel for death row inmates at all stages of the proceedings, and the strict confidentiality of all meetings with their lawyers ;**

**(d) Making available t he power of pardon, commutation and reprieve in practice for death row inmates;**

**(e) I ntroduc ing a mandatory system of review in capital cases , with suspensive effect following a death penalty conviction in first instance ;**

**(f) Ensuring an independent review of all cases when there is credible evidence that death row inmate is mentally ill. Furthermore, the State party should ensure that a detainee with mental illness is not executed in accordance with article 479(1) of the Code of Criminal Procedures;**

**(g) Providing data on death row inmates, disaggregated by sex, age, ethnicity and offence;**

**(h) Considering the possibility of abolishing the death penalty .**

## National human rights institution

16.The Committee notes with concern that the State party has not yet established a national human rights institution, in accordance with the principles relating to the status of national institutions for the promotion and protection of human rights (Paris Principles) (art. 2).

**Noting the commitment made by the State party in the context of the universal periodic review (A/HRC/22/14/Add.1, para s .147.47 ff ), the Committee urges the State party to expedite the establishment of an independent national human rights institution in conformity with the Paris Principles.**

## Training

17.While taking note of various human rights training programmes initiated by the State party, the Committee notes with concern that the State party does not provide training on the Convention for all immigration officials and that the Manual on Effective Investigation and Documentation of Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Istanbul Protocol) is not incorporated in the training programme. The lack of information on the effectiveness and impact of those training programmes in reducing the number of cases of torture, including gender-based violence and ill-treatment is also a matter of concern (art. 11).

**T he S tate party should:**

**(a) F urther develop and strengthen training programmes to ensure that all officials, in particular judges and law enforcement, prison and immigration officers, are aware of the provisions of the C onvention ;**

**(b) Provide training on the I stanbul Protocol for medical personnel and other officials involved in the investigation and documentation of cases of torture, on a regular basis;**

**(c) Encourage the involvement of non -governmental organizations in training of law enforcement officials ;**

**(d) A ssess the effectiveness and impact of training programmes on the prevention and absolute prohibition of torture, including gender-based violence, and ill-treatment.**

## Redress, including compensation and rehabilitation

18.Notwithstanding article 1 of State Redress Act under whichvictim may seek damages against the State or the public entity, the Committee remains concerned about(a) reports of difficulties faced by victims of acts of torture or ill-treatment inobtaining redress and adequate compensation, (b) restrictionson the right to compensation, such as statutory limitations and reciprocity rules for immigrants, and (c) the lack of information on compensation requested and awarded tovictims of torture or ill-treatment (art. 14).

**Referring to its general comment No. 3 (2012) on article 14 of the Convention which clarifies the content and scope of the obligations of States parties to provide full redress to victims of torture, the Committee recommends that t he State party strengthen its efforts to ensure that all victims of acts of torture or ill-treatment can fully exercise their right to redress, including fair and adequate compensation, and as full rehabilitation as possible, as well as their right to truth. The State party should provide the Committee with information on (a) redress and compensation measures ordered by the courts and provided to victims of torture or ill-treatment , or their families This information should include the number of requests made and of those granted and the amounts ordered and actually provided in each**

case ; and (b) any ongoing rehabilitation programmes for victims of torture and ill-treatment . The State party should also allocate adequate resources to effectively implement such programmes and inform the Committee thereof .

## Victims of military sexual slavery

*19.*Notwithstanding the information provided by the State party concerningsome steps taken to acknowledge the abuses against victims of Japan's military sexual slavery practices during theSecond World War, theso-called "comfort women", the Committee remains deeply concerned at the State party's failure to meetits obligations under the Convention while addressing this matter, in *particular in relation to:*

*(a)*Failure to provide adequate redress and rehabilitation to the victims. The Committee regrets that t*he compensation, financed by private donations rather than public funds, was insufficient and inadequate;*

(b)Failure to prosecute perpetrators of such acts of torture and bring them to justice. The Committee recalls that on account of the continuous nature of the effects of torture, statutes of limitations should not be applicable as these deprive victims of the redress, compensation, and rehabilitation due to them;

(c)Concealment or failure to disclose related facts and materials;

(d)Continuing official denial of the facts and retraumatization of the victims by high-level national and local officials and politicians, including several diet members;

(e)*F*ailure to carry out effective educational measures toprevent gender-based breaches of the Convention,as illustrated, inter alia, by a decrease in *references to this issue in school history textbooks;*

(f)The State party's rejection of several recommendations relevant to this issue, made in the context of the universal periodic review (A/HRC/22/14/Add.1, paras.147.145 ff.), which are akin to recommendations made by the Committee (para. 24) and many other United Nationshuman rights mechanisms, inter alia, the Human Rights Committee (CCPR/C/JPN/CO/5, para. 22), the Committee on the Elimination of Discrimination against Women (CEDAW/C/JPN/CO/6, para. 38), the Committee on Economic, Social and Cultural Rights (E/C.12/JPN/CO/3, para. 26) and several special procedures mandate holders of the Human Rights Council *(arts. 1, 2, 4, 10, 14 and 16)*.

**Recalling its general comment No. 3 (2012)**, the Committee urges **the State party** to **take**immediate and effective legislative and administrative measures **to**find a **victim- centred resolution** for the issues of "comfort women", in particular, by:

**(a) Publicly acknowledging legal responsibility for the crimes of sexual slavery , and p rosecut ing and punish ing perpetrators with appropriate penalties;**

**(b) R efut ing attempts to deny the facts by government authorities and public figures and to re - traumatiz e the victims through such repeated denials ;**

**(c) Disclosing related materials, and investigat ing the facts thoroughly ;**

**(d) Recognizing the victim's right to redress, and accordingly provid ing them full and effective redress and reparation, including compensation, satisfaction and the means for as full rehabilitation as possible;**

**(e) E ducat ing the general public about the issue and include the events in all history textbooks, as a means of preventing further violations of the State party's obligations under the Convention .**

## Violence against women and gender-based violence

20.While taking note of the State party's efforts to combat gender-based violence, the Committee is concerned at reportson the continuing incidents of gender-based violence, in particular domestic violence, incest and rape,including marital rape, the low number of complaints, investigations, prosecutions and convictions for such cases, and insufficient legal protections for victims.Furthermore, the Committee expresses its concern at the requirement of the victim's complaint in the Penal Code in order to prosecute crimes of sexual violence. (arts. 2, 12, 13, 14 and 16)

**In light of previous recommendations made by the C o mmittee (para. 25) and the Committee on the Elimination of Discrimination against Women ( CEDAW/C/JPN/CO/6, paras. 31-3 4), t he State party should strengthen its efforts to prevent and prosecute all forms of gender-based abuse, including domestic violence, incest and rape, including marital rape, in particular, by:**

**(a) A dopting and implementing a coherent and comprehensive national strategy for the elimination of violence against women that includes legal, educational, financial and social components;**

**(b) Guaranteeing victims of such violence access to a complaint mechanism , and facilitating victims' physical and psychological rehabilitation . Such support should be extended to victims of all military personnel , including those in foreign forces in the State party ;**

(c) P romptly, effectively and impartially investigating all incidents of violence against women and prosecuting those responsible. The Committee urges the State party to revise its legislation to ensure that the crime of sexual violence is prosecuted without complaint by the victim;

(d) Broadening public awareness-raising campaigns on all forms of violence against women and gender-based violence.

## Trafficking

21.While noting the State party's efforts to combat human trafficking, including the 2009 Action Plan on Measures to Combat Trafficking in Persons, the Committee is concerned at the lack of information on the resources provided for this action plan, and thewide discrepancy between the numbers of persons arrested for trafficking and of persons prosecuted and convicted. The Committee regrets the lack of information about the coordinating and monitoring body and the impact of measures to address trafficking, especially on children (arts. 2, 12, 13, 14 and 16).

The Committee calls on the State party to fully implement the recommendations made by the Special Rapporteur on trafficking in persons ( A/HRC/14/32/Add.4 ), following her visit to Japan in 2009. In particular, the State party should ensure that :

(a) Victims of trafficking are provided with adequate assistance for their physical and psychological recovery;

(b) Clear identification procedures are set out, so that victims of trafficking are not incorrectly identified and treated as undocumented migrants and deported without redress or remedy ;

(c) Perpetrators are prosecuted and punished with appropriate penalties;

(d) Specialized training is provided to relevant public officials in this regard.

In addition, the State party should c onsider ratifying the Protocol to Prevent , Suppress and Punish Trafficking in Persons , Especially Women and Children ( P alermo P rotocol ).

## Psychiatric health care

22.Notwithstanding the Act on Mental Health and Welfare for the MentallyDisabled, which established operating parameters for mental health institutions and the additional information provided by the State party's delegation, the Committee remains concerned at the high numbers of persons with mental disabilities, both psychosocial and intellectual who are held in mental health-care institutions on involuntary basis and frequently for a lengthy period of time. The Committee is further concerned at the frequent use of solitary confinement, restraints and forced medication, actions which may amount to inhumane and degrading treatment. Taking into account the information received during the dialogue on plans regarding mental health care, the Committee remains concerned at the lack of focus on alternatives to hospitalization of persons with mental disabilities. Finally, the Committee is concerned about the frequent lack of effective and impartial investigation of the excessive use of restrictive measures as well as at the lack of relevant statistical data(arts. 2, 11, 13 and 16).

The Committee urges the State party to ensure that :

(a) E ffective judicial control over involuntary treatment and placement, as well as effective appeals mechanisms are established ;

(b) O utpatient and community services are developed and the number of institutionalized patients is brought down ;

(c) E ffective legal safeguards are respected in all places of deprivation of liberty, including psychiatric and social care institutions;

(d) A ccess to effective complaint mechanisms is strengthened ;

(e) U se of restraints and solitary confinement is avoided or applied as a measure of last resort when all other alternatives for control have failed, for the shortest possible time, under strict medical supervision , and any such act is duly recorded;

(f) E ffective and impartial investigations are undertaken in incidents where excessive use of such restrictive measures result in injuries of the patient;

(g) R emedies and redress are provided to the victims;

(h) I ndependent monitoring bodies conduct regular visits to all psychiatric institutions.

## Corporal punishment

23.Noting that child abuse is prohibited under article 3 of the Act on Child Abuse Prevention, the Committee shares concern raised by the Committee on the Rights of Child (CRC/C/JPN/CO/3, para. 47) that corporal punishment in the home and in

alternative care settings is not expressly prohibited by law and that the Civil Code and the Act on Child Abuse Prevention allow the use of appropriate discipline and are unclear as to the admissibility of corporal punishment in some cases (art. 16).

**T he State party should e xplicitly prohibit corporal punishment and all forms of degrading treatment of children in all settings by law .**

## Other issues

**24. The State party should establish an effective system to gather all statistical data disaggregated by sex, age and authenticity, relevant to the monitoring of the implementation of the Convention at the national level, including complaints, investigations, prosecutions, convictions of cases of torture and ill-treatment by public officials, trafficking and domestic and sexual violence as well a s means of redress, including compensation and rehabilitation, provided to the victims.**

25.The Committee recommends that the State party strengthen its cooperation with United Nations human rights mechanisms, including by permitting a visit of, inter alia, the Working Group on Arbitrary Detention,as well as its efforts in implementing their recommendations. The State party should take further steps to ensure a well-coordinated, transparent and publicly accessible approach to overseeing implementation of its obligations under the United Nations human rights mechanisms, including the Convention.

26.Noting the commitment made by the State party in the context of the universal periodic review (A/HRC/22/14/Add.1, para. 147.9), the Committee urges the State party to accelerate the current domestic discussions and to ratify the Optional Protocol to the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment as soon as possible. The Committee also recommends that the State party consider making the declaration envisaged under article 22 of the Convention.

27.The Committee invites the State party to ratify the core United Nations human rights treaties to which it is not yet a party, namely the Second Optional Protocol to the International Covenant on Civil and Political Rights, the International Convention on the Protection of the Rights of All Migrant Workers and Members of Their Families, and the Convention on the Rights of Persons with Disabilities.

28.The State party is requested to disseminate widely the report submitted to the Committee and the Committee's concluding observations, in appropriate languages, through official websites, the media and non-governmental organizations.

29.The Committee requests the State party to provide, by 31 May 2014, follow-up information in response to the Committee's recommendations related to (a) ensuring or strengthening legal safeguards for persons detained, (b) conducting, prompt, impartial and effective investigations, and (c) prosecuting suspects and sanctioning perpetrators of torture or ill-treatment, as contained in paragraphs 10, 11 and 15 of the present concluding observations. In addition, the Committee requests follow-up information on remedies and redress to the victims, as contained in paragraph 19 of the present concluding observations.

30.The State party is invited to submit its next report, which will be the third periodic report, by 31 May 2017. To that purpose, the Committee will, in due course, submit to the State party a list of issues prior to reporting, considering that the State party has accepted to report to the Committee under the optional reporting procedure.