UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL L. TAYLOR and<br>PETER M. TAYLOR,<br>    *Petitioners*,<br><br>    *v.*<br><br>JEROME P. MCDERMOTT,<br>Sheriff, Norfolk County, Massachusetts<br>and JOHN GIBBONS,<br>U.S. Marshal, District of Massachusetts<br>    *Respondents* | Case No. 4:20-cv-11272 |

**RESPONDENTS' OPPOSITION TO PETITIONERS' MOTION FOR TEMPORARY STAY OF HABEAS PROCEEDING AND FOR REMAND TO EXTRADITION MAGISTRATE**

Respondents, Jerome P. McDermott, Sheriff, Norfolk County, Massachusetts, and John Gibbons, U.S. Marshal, District of Massachusetts, through their undersigned counsel, respectfully submit this memorandum of law in opposition to Petitioners' Motion for Temporary Stay of Habeas Proceeding and for Remand to Extradition Magistrate ("Motion") filed by Michael L. Taylor and Peter M. Taylor (the "Taylors"), Docket Entry ("DE") 68.

## INTRODUCTION

In the seven months since their arrests, the Taylors have never disputed their instrumental role in enabling Carlos Ghosn Bichara ("Ghosn") to flee criminal prosecution in Japan. The overwhelming evidence against both Michael Taylor and Peter Taylor includes video surveillance camera images, financial records, witness statements, and contemporaneous documents that show how each man carefully planned and executed one of the most dramatic escape acts in recent memory. Now, after the Taylors have both been found extraditable, the Deputy Secretary of State has issued warrants for their surrenders, and their second habeas petition has been submitted for adjudication, Peter Taylor (alone) contends for the first time that there is not probable cause to believe he helped smuggle Ghosn out of Japan. Peter Taylor's claim is meritless, and the Motion should be denied.

The exceedingly slender thread upon which Peter Taylor rests his newfound argument is the tangential issue of whether a room key was needed to operate the elevator and access the ninth floor of the Grand Hyatt Tokyo, where he stayed while facilitating the escape. Supported by the testimony of the receptionist who checked Peter Taylor into the hotel, Japan alleged in its extradition request that a room key was required to access the ninth floor, and that Peter Taylor provided Ghosn with his spare key so that Ghosn could go to his room unaccompanied on the day of the escape. At the time the Taylors filed the instant Motion, Japan was further investigating the Grand Hyatt Tokyo's security

protocols because another witness recently stated a room key had not been required to access the ninth floor.

Now, Japan has completed its investigation and confirmed that a room key was indeed required to access the ninth floor on December 29, 2019, the day of the escape. *See* Ex. A. Japan's conclusion is supported by a contemporaneous document provided by the Grand Hyatt Tokyo, the Grand Hyatt Tokyo's own conclusion, and the additional interview of the witness who had thought a room key was not required on December 29, 2019, but then recognized he was mistaken after reviewing the documentary evidence. *Id.* Notably, Peter Taylor has never denied the fact that he needed a room key to access the floor where he was staying or the fact that he provided Ghosn with his spare key—despite those facts being manifestly within his personal knowledge—much less has he provided any explanatory evidence on the subject. Japan's supported conclusion that a room key was required to access the ninth floor on December 29, 2019, moots the sole grounds upon which the Taylors' Motion is based.

Regardless, Peter Taylor's role in enabling Ghosn's escape from Japan extends far beyond providing Ghosn with his room key. As discussed in more detail below, Peter Taylor was deeply involved in the financing, planning, and execution of the complex operation. Indeed, the myriad facts which Magistrate Judge Cabell marshalled in support of his probable cause finding did not even include the ninth floor access issue. *See* DE 50-1, Extradition Certification and Order of Commitment (hereinafter "Opinion" or "Op.") at 6-7. The evidentiary record amply supports Magistrate Judge Cabell's probable cause finding regardless of the Grand Hyatt Tokyo's security protocols.

Accordingly, the Court should deny the Taylors' motion for a remand to the extradition magistrate judge and a temporary stay of the habeas petition pending before the Court.[1]

## BACKGROUND

Japan seeks the Taylors' extraditions so that they can stand trial for enabling Ghosn to escape Japan while he was under indictment for committing serious financial crimes.[2] On May 20, 2020, the Taylors were arrested in this District based on an extradition complaint filed by the government and an arrest warrant issued by Magistrate Judge Cabell. *See* Op. at 1-2. During the ensuing extradition litigation, the Taylors never contested any of the facts, but rather focused their defense on issues of Japanese law. On September 4, 2020, following extensive briefing and an extradition hearing, Magistrate Judge Cabell issued a decision finding both Taylors' extraditable. *Id.* at 11. In his Opinion, Magistrate Judge Cabell noted that "[f]actually speaking, the parties agree, and the court finds support in the record, that the [Taylors] committed the conduct underlying the charges against them." *Id.* at 6. As discussed in more detail below, Magistrate Judge Cabell then made specific factual findings supporting his determination that there is probable cause to believe both men helped Ghosn escape Japan. *Id.* at 6-7. Those findings did not include the fact that Peter Taylor provided Ghosn a room key so that Ghosn could access the Grand Hyatt Tokyo's ninth floor, where Peter Taylor was staying.

On October 28, 2020, the Taylors were informed that the Deputy Secretary of State had authorized their surrender to Japan. *See* DE 50-4. On October 29, 2020, the Taylors filed their second habeas petition and a motion to stay their extradition. *See* DE 47, 48. The petition did not contest any of Magistrate Judge Cabell's factual findings or any other factual component of Japan's case against

---

[1] Alternatively, at a minimum, the Court should deny the Motion with respect to Michael Taylor, as he is not seeking reconsideration of Magistrate Judge Cabell's probable cause determination.

[2] For a detailed description of the procedural, legal, and factual background of the case, the government refers the Court to its response to the Taylors' second habeas petition and accompanying exhibits. *See generally* DE 50, 53.

4

them. The petition and motion are fully briefed and pending decision, and the Court has ordered an interim stay of the Taylors' extradition to Japan. *See* DE 54.

In letters dated December 17, 2020 and December 21, 2020, the government brought to the Court's attention the issue of whether a room key was necessary to access the Grand Hyatt Tokyo's ninth floor on the day Ghosn escaped Japan. *See* DE 65, 67. The government did so out of an abundance of caution and in light of the fact that it had addressed the issue in its prior pleadings. In its December 21, 2020 filing, the government attached an explanatory letter from Japan. *See* DE 67-1. The receptionist who checked Peter Taylor into the Grand Hyatt Tokyo had informed Japanese investigators in January 2020 that a room key was required to access the ninth floor. *See id.*; *see also* Ex. B at EX-Taylor, P.-00764. More recently, however, another Grand Hyatt Tokyo employee told Japanese investigators that a room key was not required to access the ninth floor at the time of Peter Taylor's stay. *See* DE 67-1. Given the conflicting statements, Japan decided to further investigate the matter. *Id.*

After initially indicating that they would wait to receive further information from Japan, *see* DE 66, the Taylors reversed course and filed the instant Motion without attempting to meet and confer with the government, and before Japan provided the results of its investigation to the government.[3] Peter Taylor also filed a motion for reconsideration before Magistrate Judge Cabell. *See* DE 68-1. Magistrate Judge Cabell has ordered the government to respond to that motion by January 11, 2021, and to specifically address whether he has jurisdiction to consider the motion given the fact that he has already certified Peter Taylor's extradition to Japan and the fact that there is a pending

---

[3] As the government advised the Taylors' counsel, a meet and confer session was not only required by Local Rule 7.1(a)(2), but also would have been helpful because the government expected to shortly receive information from Japan regarding its investigation.

5

habeas petition before this Court. *See In re Peter Taylor*, 4:20-mj-01070 (D. Mass.), DE 58. The government anticipates requesting that Magistrate Judge Cabell defer consideration of Peter Taylor's motion for reconsideration until this Court has had the opportunity to rule on the Taylors' motion for remand.

On December 31, 2020, Japan provided the government with a letter that stated its investigation was complete, affirmed the fact that a room key was indeed necessary to access the ninth floor of the Grand Hyatt Tokyo on the day Ghosn escaped, and provided supporting evidence for that conclusion. *See* Ex. A. As discussed in more detail below, the results of Japan's further investigation moots the Taylors' Motion.

**ARGUMENT**

Peter Taylor is not entitled to reconsideration of Magistrate Judge Cabell's finding that probable cause exists. The additional information provided by Japan further supports that determination and moots the Taylors' Motion, which could not negate probable cause under any circumstance. Nor is a temporary stay of these proceedings appropriate as Peter Taylor has not shown any likelihood of success on the merits of his claim, much less has he made the requisite strong showing that Magistrate Judge Cabell would now decline to find him extraditable. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (first factor in four-part stay inquiry is whether the applicant has made a strong showing that he is likely to succeed on the merits); *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.").

I. **The Results of Japan's Further Investigation Moots the Taylors' Motion**

The only grounds upon which Peter Taylor seeks reconsideration of Magistrate Judge Cabell's certification decision is Japan's purported "recent correction" that a room key was not necessary to access the ninth floor of the Grand Hyatt Tokyo on the day Ghosn escaped. *See* DE 68-1 at 1. In fact, however, Japan's additional investigation has corroborated its conclusion that a room key was necessary. *See* Ex. A. Thus, the Taylors' Motion is moot. A more detailed explanation of Japan's investigation is set forth below.

In its extradition request, Japan included the January 19, 2020, statement of the Grand Hyatt Tokyo receptionist who checked Peter Taylor into the hotel on December 28, 2019, the day before Ghosn escaped. *See* Ex. B. The receptionist stated, in relevant part:

> Anyone can get in or off the elevator on the 1st [lobby], 2nd, 5th, 6th, and 10th floors where there are restaurants, a spa, etc., but a guest who wants to get off the elevator on any other guest room floor must insert his room card key into the control panel in the elevator to activate the button for his guest room floor. For example, if a guest has a room card key to Room 933, he can get off the elevator only on the 9th floor, among the guest room floors.

*Id.* at EX-Taylor, P.-00764.

After recently receiving conflicting information from another Grand Hyatt Tokyo employee, Japan decided to further investigate whether a room key was required to access the ninth floor on the day Ghosn escaped. Japan's further investigation, which included reviewing additional documents and conducting additional interviews, corroborated the statement provided by the receptionist who checked Peter Taylor into the hotel and who explained that a room key was required. *See* Ex. A.

First, Grand Hyatt Tokyo provided to Japan an email dated November 1, 2019, entitled "Guests elevator security lock." *Id.* at 11. In that email, a Grand Hyatt Tokyo employee notified hotel staff teams that they would "need key cards every time to access guest floors except 2/5/6/10 floors

7

as of today." *Id.* Peter Taylor stayed at the Grand Hyatt Tokyo less than two months after these security measures were enacted.

Second, the Grand Hyatt Tokyo itself confirmed to Japan that a room key was required on December 29, 2019, the day of the escape. *Id.* at 13. In a letter dated December 30, 2020, the Hotel Manager advised the Tokyo District Public Prosecutors Office that "Grand Hyatt Tokyo conducted an investigation regarding the usage of the guestroom keys dated on December 29, 2019. We confirmed that a guestroom key card was needed to access the elevator to the 9th floor of Grand Hyatt Tokyo." *Id.*

Third, Japan re-interviewed the Grand Hyatt Tokyo employee who stated that a room key was not required to access the ninth floor on December 29, 2019. *Id.* at 9. When shown the November 1, 2019, email notifying Grand Hyatt Tokyo staff teams that the guest floors would be locked as of that day, the employee realized that he was mistaken about the timing of when a key card was needed to operate the elevator to access the ninth floor. *Id.*[4]

Based on the foregoing information, Japan has affirmed its conclusion that a room key was necessary to access the Grand Hyatt Tokyo's ninth floor where Peter Taylor was staying. *Id.* Accordingly, the Taylors' Motion is moot. However, this episode is instructive in one regard. Japan's voluntary disclosure of a conflicting witness statement and its subsequent investigation of a minor point in its case stands in sharp contrast to the criticisms that the Taylors have leveled at the Japanese

---

[4] Regardless, the existence of conflicting witness statements does not obliterate probable cause. *See, e.g.*, *Noeller v. Wojdylo*, 922 F.3d 797, 807 (7th Cir. 2019) ("[I]nconsistencies are surely relevant to the ultimate question of [the fugitive's] guilt or innocence, but those issues must be addressed in the Mexican criminal justice system, not ours."); *In re Extradition of Martinelli Berrocal*, No. 17-CV-22197, 2017 WL 3776953, *21 (S.D. Fla. Aug. 31, 2017) ("In making a probable cause determination, an extraditee cannot merely allege that the evidence submitted by the requesting country contains inconsistencies.") (collecting cases).

justice system. For the reasons set forth in the government's prior submission, *see* DE 50, the Court should dismiss the Taylors' second habeas petition.

## II. Regardless, there is Ample Other Evidence in the Record to Support Magistrate Judge Cabell's Probable Cause Determination

Even setting aside the outcome of Japan's further investigation of the Grand Hyatt Tokyo's security protocols, there is ample other, undisputed evidence in the record supporting Magistrate Judge Cabell's finding of probable cause to believe Peter Taylor helped Ghosn escape Japan.

Planning the Escape: The evidence reflects the fact that Peter Taylor was deeply involved in the planning of Ghosn's escape. Specifically, Peter Taylor traveled to Japan at least three times and visited Ghosn on at least seven occasions in the months preceding the escape. *See* Op. at 6. Then, on December 28, 2019, Peter Taylor arrived in Tokyo, checked into a room at the Grand Hyatt Tokyo, and met with Ghosn for about an hour. *Id.*

Executing the Escape: The evidence also reflects the fact that Peter Taylor played a key role in executing the plot to smuggle Ghosn out of Japan. Specifically, on the day of the escape, Peter Taylor received luggage from Ghosn's chauffeur at the Grand Hyatt Tokyo's parking area and carried the luggage to his room. *Id.* at 7; *see also* DE 53-6 at EX-Taylor, M.-00034. This enabled Ghosn to later leave his house and walk to the Grand Hyatt Tokyo without luggage in tow, which would have looked patently suspicious. Peter Taylor's hotel room also served as the safe house where Ghosn went to change his clothes and met up with Michael Taylor and George Zayek, who then escorted him out of Japan. *Id.*

Financing the Escape: In addition, the evidence indicates that Peter Taylor was the recipient of funds necessary to finance the operation and pay the Taylors for their services. Specifically, bank records reflect the fact that Ghosn paid $862,500 to Peter Taylor's company, Promote Fox LLC, in

October 2019, two months before the escape. *See* DE 53-1. Then, Ghosn's son, Anthony Ghosn, paid $500,000 to Peter Taylor in cryptocurrency between January 21, 2020 and May 15, 2020. *See* DE 53-2.

The Supreme Court has held that the extradition magistrate's probable cause determination should be upheld if there is "*any* evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925) (emphasis added). Japan's evidence against Peter Taylor is more than sufficient to meet this standard. Where, as here, the evidentiary record continues to support the magistrate judge's probable cause determination, remand motions are denied. *See, e.g.*, *Shapiro v. Ferrandina*, 478 F. 2d 894, 914 (2d. Cir. 1973) ("An examination of the record and of Judge Pollack's opinion, however, convinces us that such a 'remand' is unnecessary."); *see also, e.g.*, *Peroff v. Hylton,* 563 F.2d 1099, 1101-02 (4th Cir. 1977) (denying request for new hearing).[5] Similarly here, the Taylors' Motion should be denied.

---

[5] The cases cited by the Taylors where remand was granted are readily distinguishable on their facts. *See, e.g.*, *Na-Yuet v. Hueston*, 690 F. Supp. 1008, 1010-12 (S.D. Fla. 1988) (court noted that a motion for a rehearing is "looked upon with disfavor" but granted the motion because it found "the newly discovered evidence to cast substantial doubt on the sufficiency of the evidence presented at the extradition hearing"); *cf. Greci v. Birknes*, 527 F.2d 956, 961 (1st Cir. 1976) (instructing district court to order the discharge of petitioner unless magistrate certified that "the competent evidence then before him warrants petitioner's extradition").

## CONCLUSION

For the foregoing reasons, the Court should deny the Taylors' Motion.

Date: January 3, 2021

                                  Respectfully submitted,

                                  ANDREW E. LELLING
                                United States Attorney

By:    */s/ Stephen W. Hassink*
        Stephen W. Hassink
        Assistant United States Attorney

        */s/ Philip A. Mirrer-Singer*
        Philip A. Mirrer-Singer
        Trial Attorney

## CERTIFICATE OF SERVICE

I, Stephen W. Hassink, Assistant U.S. Attorney, do hereby certify that on January 3, 2021, I served a copy of the foregoing on all registered parties by electronic filing on ECF.

                                  */s/ Stephen W. Hassink*
                                  Stephen W. Hassink
                                  Assistant U.S. Attorney