UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL L. TAYLOR and PETER M. TAYLOR, <br><br> *Petitioners*, <br><br> *v.* <br><br> JEROME P. MCDERMOTT, Sheriff, Norfolk County, Massachusetts, and JOHN GIBBONS, United States Marshal, District of Massachusetts, <br><br> *Respondents.* | Case No. 4:20-cv-11272-IT |

**FIRST AMENDED VERIFIED SECOND EMERGENCY PETITION FOR HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND INJUNCTIVE RELIEF**

1.       Petitioners Michael and Peter Taylor are detained in federal custody at the Norfolk County Correctional Center, at the request of the Japanese government, pending an extradition request. *See* Nos. 20-mj-1069-DLC (D. Mass.) and 20-mj-1070-DLC (D. Mass.).

2.       On September 4, 2020, United States Magistrate Judge Donald L. Cabell issued an Extradition Certification and Order of Commitment with respect to each of the Taylors providing that they "remain in the custody of the U.S. Marshal for this District, to be held pending final disposition of this matter by the Secretary of State, and pending each respondent's potential surrender to the Government of Japan." (Case No. 4:20-mj-01069-DLC, Dkt. 54; 4:20-mj-01070-DLC, Dkt. 51.)

3.       On September 14, 2020, Magistrate Judge Cabell issued Certifications and Committals for Extradition as to both Petitioners. (Case No. 4:20-mj-01069-DLC, Dkt. 56; 4:20-mj-01070-DLC, Dkt. 53.)

4.      On September 8, 2020, Petitioners made a written submission to the Secretary of State arguing that Petitioners should not be extradited to Japan because, *inter alia*, if extradited, Japan would subject the Taylors to oppressive and punitive practices in violation of the United Nations Convention Against Torture ("CAT"), the International Covenant on Civil and Political Rights ("ICCPR"), and other fundamental notions of due process (including the right to a speedy trial, the right not to be subjected to lengthy and coercive interrogation in the absence of counsel, protection against cruel and unusual punishment, the presumption of innocence, and the right against self-incrimination).

5.      The Taylors also submitted to the Secretary of State that they should not be extradited because (a) they had not committed an extraditable offense in that the facts alleged do not constitute an offense under Japanese law; (b) continued detention and extradition would present a substantial risk to the life of Michael Taylor (who is especially susceptible to complications, including certain hospitalization and high risk of death, if he were to contract COVID-19); (c) Michael Taylor's history of service to the United States and its citizens made him and his son citizens the United States should not surrender to face a dubious prosecution with a minimal potential punishment; (d) prosecutors in Lebanon had already concluded the Taylors did not violate Japanese law; and (e) Japan's history of refusal to extradite its own citizens charged with far worse crimes and deliberate evasion of the U.S.-Japan Extradition Treaty by luring a U.S. citizen, Greg Kelly, to Japan under false pretenses make it particularly inappropriate to honor Japan's request for the Taylors' extradition.

6.      On October 28, 2020, at 5:11 p.m., the Assistant Legal Adviser for Law Enforcement and Intelligence at the Department of State emailed counsel for Petitioners a one-page letter stating that "on October 27, 2020, the Deputy Secretary of State authorized the Taylors'

surrender to Japan, pursuant to 18 U.S.C. § 3186 and the Extradition Treaty between [sic] United States and Japan." (Exhibit A.)

7.      Counsel for Petitioners have requested that the Department of State provide the administrative record in this matter. As of the time of this filing, the Department of State has not done so.

8.      Japanese media advised counsel for Petitioners that the Taylors had been scheduled to be transported to Japan on October 29, 2020, the date Petitioners filed their Verified Second Emergency Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Injunctive Relief ("the Petition"), via a 1:00 p.m. flight from Boston Logan International Airport to Narita, Japan.

9.      28 U.S.C. § 2241 makes the writ of habeas corpus available to all persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

10.     Further, the Administrative Procedure Act ("APA") guarantees judicial review by federal courts of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704.

11.     A decision regarding extradition by the Secretary of State, or pursuant to his or her delegation, is subject to judicial review under the APA's arbitrary and capricious standard and to determine whether the Secretary has complied with his statutory and regulatory obligations, including where (as here) the persons to be extradited claim that they will be subjected to torture or inhumane treatment in violation of the CAT and § 2242 of the Foreign Affairs Reform and Restructuring Act ("FARR Act"). *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956-57 (9th Cir. 2012); *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1013-15 (9th Cir. 2000).

12.     The transfer of Petitioners to Japanese custody at 1:00 p.m., October 29, 2020, less than 18 hours after notice of the Secretary's decision, would have deprived Petitioners of the opportunity to receive and review the administrative record and to seek judicial review of the Secretary's decision.

13.     On October 29, 2020, the Court stayed the surrender or transportation of Petitioners out of the District to allow the Court time to review the Petition.  (Dkt. 49.)  The Court held argument on November 5, 2020, took the matter under advisement and ordered that the stay remain in place.  (Dkt. 58.)

14.     On December 17, 2020, Japan advised the United States of new information relating to allegations included in Japan's extradition requests which had been incorporated into filings by the United States.  Specifically, Japan previously had alleged in particular detail that, on December 28, 2019, Peter Taylor provided Carlos Ghosn Bichara with an extra key to his room at the Grand Hyatt Tokyo, which Japan asserted necessarily must have happened because the following day Mr. Ghosn was able to operate the hotel elevator and access the ninth floor on his own.  However, Japan advised that, "further investigation has revealed that a room key was not necessary to access the Grand Hyatt's ninth floor where Peter Taylor was staying."  (Dkts. 64, 65 & 67.)

15.     Following these disclosures, on December 28, 2020, Peter Taylor filed a Motion for Reconsideration of Extradition Certification and Order of Commitment.  (Case No. 4:20-mj-01070-DLC, Dkt. 57.)  Therein, Peter Taylor argued that even if the offense for which extradition was sought (an alleged violation of Article 103 of the Japanese Penal Code) could properly be applied to the facts alleged by Japan, the factual evidence in the record still was not sufficient to establish probable cause to believe that *Peter Taylor* himself committed the offense, especially in

light of the fact that Japan's laws criminalizing the planning of and preparation for certain crimes do not apply to violations of Article 103.

16.     On January 15, 2021, Magistrate Judge Cabell denied Peter Taylor's Motion for Reconsideration prior to Mr. Taylor's submission of a reply brief and before this Court had ruled on Petitioners' motion to stay this proceeding and remand the issue to Judge Cabell.  (Case No. 4:20-mj-01070-DLC, Dkt. 60.)  On January 19, 2021, Peter Taylor filed a motion seeking further reconsideration which remains pending.  (Case No. 4:20-mj-01070-DLC, Dkt. 61.)

17.     Accordingly, Petitioners respectfully request that the Court order that the transfer and surrender of the Petitioners to Japanese custody be delayed until Petitioners have had a full and fair opportunity to receive and review the State Department administrative record, present and support their challenges to the Secretary's decision, and have those challenges heard by the Court in accordance with U.S. law and procedure.

18.     Further, Petitioners request that the Court set aside the Secretary's decision as arbitrary and capricious and in violation of U.S. law and applicable statutes and regulations and that the Court reverse Magistrate Judge Cabell's Extradition Certifications and Orders of Commitment (Case No. 4:20-mj-01069-DLC, Dkt. 54; 4:20-mj-01070-DLC, Dkt. 51), the Certifications and Committals for Extradition (Case No. 4:20-mj-01069-DLC, Dkt. 56; 4:20-mj-01070-DLC, Dkt. 53), and Judge Cabell's denial of Petitioner Peter Taylor's Motion for Reconsideration (Case No. 4:20-mj-01070-DLC, Dkt. 60).

## PARTIES

19.     Petitioner Michael Taylor is a lifelong resident of Massachusetts, natural-born U.S. citizen, and decorated military veteran, having served in the Special Forced for over a decade. Around 1993, Michael founded a private protective services firm, which has diligently served

clients domestically and abroad.  Among other clients, Michael has been assisting the United States government.  Michael's company has safely repatriated American citizens abducted abroad, including young children and journalists.

20.     Petitioner Peter Taylor is Michael Taylor's son and is also a lifelong resident of Massachusetts and natural-born U.S. citizen.  Peter is a graduate of Lawrence Academy (Class of 2011) and of the Lebanese-American University in Byblos, Lebanon, where he graduated with a bachelor's degree in 2015.  After graduating, Peter returned to Massachusetts and, using his language skills, started a remote tutoring business for students in Lebanon.  More recently, in January 2019, Peter founded a digital marketing business.  Although Peter has spent significant time in Lebanon over the past 15 months, he considers Massachusetts to be his home, and has consistently returned to his family's residence.

21.     Respondent Jerome P. McDermott is the Sheriff of Norfolk County, Massachusetts.  Upon information and belief, Sheriff McDermott is responsible for overseeing the Norfolk County Correctional Center.  Upon further information and belief, Sheriff McDermott is holding the Taylors at the request of—and pursuant to a contract with—the United States government.

22.     Respondent John Gibbons is the United States Marshal for the District of Massachusetts.  Upon information and belief, the Taylors are in the custody of the Norfolk County Correctional Center under the authority of Marshal Gibbons.

## JURISDICTION AND VENUE

23.     Jurisdiction is proper in this Court, *inter alia*, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2241.

24.     Venue is appropriate in this Court because the Taylors are being held in custody in Massachusetts.

25.     On July 6, 2020, Petitioners filed a previous Emergency Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Injunctive Relief challenging their unlawful detention and seeking their release from custody pending conclusion of the extradition proceedings.  (Case No. 1:20-cv-11272.)  On August 7, 2020, U.S. District Judge Indira Talwani issued a Memorandum and Order denying the prior petition.

26.     Petitioners hereby incorporate by reference the Exhibits A through JJ previously submitted in support of the Petition along with the briefs and supplements previously filed in support of the Petition and the issues presented by it and the instant Amended Petition, including specifically Docket Nos. 57, 59, 61, 62, 63, 68, 71, 75 & 78.

## COUNT I
### Petitioners' Extradition Is Arbitrary and Capricious and in Violation of U.S. Law

27.     Petitioners re-allege and incorporate paragraphs 1 through 26 above, as if fully set forth herein.

28.     The extradition of Petitioners to Japan would violate the United Nations Convention Against Torture ("CAT"), the International Covenant on Civil and Political Rights ("ICCPR"), § 2242 of the Foreign Affairs Reform and Restructuring Act ("FARR Act") and other fundamental notions of due process (including the right to a speedy trial, the right not to be subjected to lengthy and coercive interrogation in the absence of counsel, protection against cruel and unusual punishment, the presumption of innocence, and the right against self-incrimination).

29.     Further, the Secretary must consider an extraditee's torture claim and find it not "more likely than not" that the extraditee will face torture before extradition can occur.  22 C.F.R. § 95.2.  The Department of State has not provided any documentation that such a determination was made in accordance with the Secretary's statutory and regulatory obligations.

30.     Accordingly, the extradition of Petitioners is arbitrary and capricious and in violation of United States law.

## COUNT II
### Unconstitutional Arrest and Confinement without Probable Cause
### in Violation of the Fourth Amendment to the Constitution

31.     Petitioners re-allege and incorporate paragraphs 1 through 30 above, as if fully set forth herein.

32.     The Fourth Amendment to the United States Constitution provides, among other things, that "no warrants shall issue, but upon probable cause."

33.     At a minimum, to establish probable cause, the government must allege facts establishing that the Taylors committed a crime subject to extradition.  *See, e.g.*, *Parretti v. United States*, 122 F.3d 758, 771 (9th Cir. 1997), *withdrawn under the fugitive disentitlement doctrine*, 143 F.3d 508 (9th Cir. 1998).

34.     The government failed to establish probable cause before seeking the Taylors' arrest and detention because it has not shown either that the Taylors violated Article 103 of the Japanese Penal Code, or that Japan has charged the Taylors under Article 103.  The government did not seek the Taylors' arrest or detention on any other basis.

35.     During the extradition proceeding, the government never presented evidence establishing probable cause that the Taylors violated Article 103.

36.     Japan's requests for extradition do not present probable cause that the Taylors violated Article 103.

37.     The Taylors' arrest and detention is therefore unlawful and unconstitutional.

**COUNT III**
**Arrest and Confinement without Probable Cause**
**in Violation of the Extradition Treaty with Japan**

38.     Petitioners re-allege and incorporate paragraphs 1 through 37 above, as if fully set forth herein.

39.     Article IX of the Treaty provides that an "application for provisional detention shall describe the identity of the person to be sought and the facts of the case, and shall contain such further information as may be required by the laws of the requested Party."  Treaty, with Exch. of Notes, Signed at Tokyo Mar. 3, 1978; T.I.A.S. No. 9625 (Mar. 26, 1980).

40.     Interpreting similar language, courts have required the government to justify a provisional arrest with probable cause.  *See, e.g.*, *Sahagian v. United States*, 864 F.2d 509, 513 (7th Cir. 1988) (finding arrest proper where "the federal officials obtained [plaintiff's] provisional arrest and detention pending extradition after obtaining an arrest warrant from a magistrate based upon a showing of probable cause," "[a]s contemplated by [the treaty]").

41.     Article VIII of the Treaty requires a party requesting extradition to provide "[s]uch evidence as would provide probable cause to suspect, according to the laws of the requested Party, that the person sought has committed the offense for which extradition is requested."  Treaty, with Exch. of Notes, Signed at Tokyo Mar. 3, 1978; T.I.A.S. No. 9625 (Mar. 26, 1980).

42.     At a minimum, to establish probable cause, the government must allege facts establishing that the relators committed a crime subject to extradition.  *See, e.g.*, *Parretti*, 122 F.3d at 771.

43.     The government failed to establish probable cause that the Taylors violated Article 103 of the Japanese Penal Code, or that Japan has charged the Taylors under Article 103.  The government did not seek the Taylors' arrest or detention on any other basis.

44.     During the extradition proceeding, the government never presented evidence establishing probable cause that the Taylors violated Article 103.

45.     Japan's requests for extradition do not present probable cause that the Taylors violated Article 103.

46.     The Taylors' arrest and detention is therefore contrary to the Treaty.

## COUNT IV
### Arrest and Confinement
### in Violation of 18 U.S.C. § 3184

47.     Petitioners re-allege and incorporate paragraphs 1 through 46 above, as if fully set forth herein.

48.     Section 3184 of Title 18 of the United States Code permits magistrate judges to issue a "warrant for the apprehension" of a person pursuant to a treaty only "upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government *any of the crimes provided for by such treaty or convention*."  (Emphasis added).

49.     The government failed to meet the requirements of 18 U.S.C. § 3184 because it has not shown either that the Taylors violated Article 103 of the Japanese Penal Code, or that Japan has charged the Taylors under Article 103.  The government did not seek the Taylors' arrest or detention on any other basis.

50.     The Taylors' arrest and detention is therefore contrary to 18 U.S.C. § 3184.

## COUNT V
### Unconstitutional Conditions of Confinement in
### Violation of the Fifth Amendment to the Constitution

51.     Petitioners re-allege and incorporate paragraphs 1 through 50 above, as if fully set forth herein.

52.     "The due process guarantee of the Constitution obliges the government 'to refrain at least from treating a pretrial detainee with deliberate indifference to a substantial risk of serious harm to health.'"  *Savino v. Souza*, 2020 WL 1703844, at *6 (D. Mass. Apr. 8, 2020) (quoting *Coscia v. Town of Pembroke*, 659 F.3d 37, 39 (1st Cir. 2011)).

53.     Petitioners are under the custody and control of Respondents and are unable to take steps to protect themselves from COVID-19—such as by social distancing.

54.     Respondents are aware of COVID-19 and the danger it poses to the Petitioners.

55.     Respondents are also aware of the heightened risk of complications faced by individuals with certain medical conditions, including Michael Taylor.

56.     Respondents have disregarded an excessive risk to health and safety and have failed to provide adequate safeguards to protect the Petitioners from a serious risk of harm of serious illness, permanent injury, and death.  To the contrary, the outbreak at the Norfolk County Correctional Center appears to be getting worse.

57.     Respondents' failure to protect Petitioners from these conditions, including by releasing them from the conditions altogether, constitutes deliberate indifference to the Petitioners' serious medical needs, thereby establishing a violation of the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, Petitioners request that the Court immediately grant the following relief:

a.     Issue a Writ of Habeas Corpus and/or any appropriate order immediately halting the transfer of Petitioners to the custody of the Government of Japan;

b.     Issue a Writ of Habeas Corpus finding the Secretary of State's decision to surrender Petitioners for extradition is arbitrary and capricious and in violation of U.S. law;

c.     Issue a Writ of Habeas Corpus reversing the decisions of Magistrate Judge Cabell certifying Petitioners' extraditability; and

b.     Grant Petitioners such other and further relief as the Court may deem just and appropriate.

Dated:  January 24, 2021

Respectfully submitted,

By their attorneys,

/s/  Paul V. Kelly
Paul V. Kelly (BBO No. 267010)
Jackson Lewis, P.C.
75 Park Plaza
Boston, MA  02110
Tel (617) 367-0025
paul.kelly@jacksonlewis.com

/s/ Abbe David Lowell (by permission)
Abbe D. Lowell (*pro hac vice*)
Christopher D. Man
Zachary B. Cohen
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
Tel. (202) 282-5875
adlowell@winston.com

*Counsel for Michael and Peter Taylor*

/s/ Daniel Marino (by permission)
Daniel Marino (*pro hac vice*)
dmarino@marinofinley.com
Tillman J. Finley (*pro hac vice*)
tfinley@marinofinley.com
MARINO FINLEY LLP
800 Connecticut Avenue, N.W., Suite 300
Washington, DC  20006
Tel.  202.223.8888

*Counsel for Michael L. Taylor*

/s/James P. Ulwick (by permission)
James P. Ulwick (*pro hac vice*)
KRAMON & GRAHAM PA
One South Street, Suite 2600
Baltimore, MD  21202
Tel. (410) 752-6030
JUlwick@kg-law.com

*Counsel for Peter M. Taylor*

**<u>VERIFICATION</u>**

I, Paul V. Kelly, counsel for Petitioners Michael and Peter Taylor, hereby verify and declare under penalty of perjury as provided by 28 U.S.C. § 1746, that I have read the foregoing First Amended Verified Second Emergency Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Injunctive Relief and know the contents thereof, and that the matters contained therein, are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

I hereby verify and declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.


Executed this 24th day of January, 2021, at Boston, Massachusetts.


_____

Paul V. Kelly